The Peoria and Pekin Union Railway Company

*v.*

· John Tamplin *et al.*

*Filed at Ottawa May 15, 1895.*

1. Ejectment—*common source of title—what is.*  A defendant in ejectment need not trace title back of a grantor under whom plaintiff claims a title which such grantor had acquired by adverse possession for twenty years, running after the time he made deed to such defendant.

2. Deeds—*construction—all parts given effect.*  Clauses in a deed should be regarded as inserted for a purpose, and given a meaning that will aid the description.  Every part should, if possible, take effect, and every word operate.

3. Same—*construction of a particular clause in description.*  In a deed granting a strip of land along a railroad track, the clause, "the nearest part of the land herein conveyed being twenty feet distant from the center line of said * * * railroad," means (under the facts in this case) such distance from the centre line of the *track*, and not of the *right of way*.

4. Such clause cannot be rejected as surplusage, and inconsistent with a previous description of the land, as having a width of twenty-five feet, lying adjoining and parallel with the land of the railroad, where there is nothing to indicate the amount, location or boundaries of the land which the strip is to adjoin and be parallel with.

5. Appeals and Errors—*judgment, in ejectment, for too much land, reversed.*  A judgment, in ejectment, will be reversed, on appeal, where manifestly for a greater quantity of land than is shown to be owned by the plaintiffs, in any view that may be taken of the evidence.

6. Adverse possession—*extends to boundaries named in the deed.*  Actual possession under a deed extends to the boundaries named in such deed, except as to those portions of the premises actually in the possession of others.

7. Same—*not under deed, must be actual.*  Adverse possession not under a deed cannot be constructive, but must be actual, visible, continuous, notorious, distinct and hostile.

8. Same—*what will operate as an abandonment.*  Where one holding land by naked possession abandons a portion of it, and leaves it unenclosed by moving his fence back, such portion is thereby brought within the constructive possession of one holding under a

deed for a tract including such abandoned land, where he is in actual possession of a part.

9. SAME—*as affected by removal of structures.* Adverse possession without paper title is not continuous, where the occupation was by means of a structure removed and re-erected upon a different part of the land before the expiration of the statutory period.

10. INSTRUCTIONS—*must not assume facts not proved.* An instruction assuming facts not shown by the evidence is erroneous.

11. SAME—*right of defendant to deny ownership by adverse possession.* An instruction, in ejectment by one claiming title by adverse possession of defendant's grantor, arising after deed was made to defendant, that defendant cannot claim title under such deed and at the same time deny that such grantor was the owner of the land, is misleading, as implying that defendant could not deny such grantor's ownership by adverse possession after the deed.

APPEAL from the Circuit Court of Peoria county; the Hon. N. W. GREEN, Judge, presiding.

STEVENS & HORTON, for appellant:

The predecessor of appellant took possession of part, at least, of the premises in 1864, by building its main track; and thus being in possession of part under a deed, it was, in law, in the possession of all the land conveyed, except as actually possessed by another. *Hardisty* v. *Glenn,* 32 Ill. 62; *Fisher* v. *Bennehoff,* 121 id. 426; *Barger* v. *Hobbs,* 67 id. 592; *Whitford* v. *Drexel,* 118 id. 600.

The law required appellees to prove, by clear and positive proof, an actual, continuous occupancy for the full period of twenty years, of such character as to notify appellant and mankind generally that they were upon the land claiming it as their own. Wood on Limitation, 514; *Bristol* v. *Carroll,* 95 Ill. 84; *Champaign* v. *McMurray,* 76 id. 353; *Weaver* v. *Wilson,* 48 id. 128; *Webb* v. *Sturtevant,* 1 Scam. 181; *Bridge Co.* v. *Lonergan,* 91 Ill. 508; *Corning* v. *Troy, etc.* 34 Barb. 529; *Smith's Heirs* v. *Frost,* 2 Dana, 114; *Shaw* v. *Schoonover,* 130 Ill. 448; *Coleman* v. *Railway Co.* 36 Minn. 525; *Railroad Co.* v. *Railway Co.* 85 Ill. 211; *Railway Co.* v. *Gault,* 133 id. 657.

If Tamplin withdrew his fence before the twenty years expired, and the land fenced out became vacant or in the possession of the company, his occupancy of such part ceased. He had no constructive possession. *Brooks* v. *Bruyn*, 18 Ill. 539; *Weaver* v. *Wilson*, 48 id. 128; *Knight* v. *Coleman*, 19 N. H. 118; *Corning* v. *Troy, etc.* 34 Barb. 539; *Hunnicutt* v. *Peyton*, 102 U. S. 333; *Railroad Co.* v. *Railway Co.* 85 Ill. 211.

The word "railroad" refers to the track; but if there is a doubt, it is the duty of the court to adopt the meaning most favorable to the grantee. *Cottingham* v. *Parr*, 93 Ill. 233; *Sharp* v. *Thompson*, 100 id. 447; *Middleton* v. *Pritchard*, 3 Scam. 510; *Boone* v. *Clark*, 129 Ill. 466.

Where the party relies upon a fence to establish his title to land, he cannot extend his possession beyond its limits except by an actual occupancy of the land outside the limits of the fence, for the full statutory period. Wood on Limitation of Actions, 516; *Robbins* v. *Moore*, 129 Ill. 30.

James A. Cameron, and H. W. Wells, for appellees:

Monuments,—tangible things, capable of being identified by witnesses,—must always control and supersede courses and distances. *Kamphouse* v. *Gaffner*, 73 Ill. 453; *Miller* v. *Beeler*, 25 id. 163; *Piper* v. *Connelly*, 108 id. 646; *Bolden* v. *Sherman*, 101 id. 418; *England* v. *Vandemark*, 147 id. 76.

This is the law in the States generally. *Kennebec Purchase* v. *Tiffany*, 1 Me. 219; *Knowls* v. *Toothacker*, 58 id. 175; *Cornminey* v. *Troy Co.* 40 N. Y. 208; *Sneider* v. *Hamilton*, 20 Mich. 433.

When land is described in a deed by monuments and quantity, and upon a survey they are not harmonious, the quantity must yield to the monuments. *Cottingham* v. *Parr*, 93 Ill. 233; *Murphy* v. *Riemenschneider*, 104 id. 520; *Purinton* v. *Railroad Co.* 46 id. 300.

Where there are two descriptions of the same premises in a deed or other writing, one of which is complete and the other is something added which is subordinate and incorrect, the incorrect or subordinate part may be regarded as surplusage. *Burns* v. *Miller*, 110 Ill. 242.

So, also, where there are two descriptions in a deed, the one, as it were, superadded to the other, the one being complete and sufficient in itself, and the other, which is superadded, being incorrect, the incorrect description is regarded as surplusage. *Stevens* v. *Wait*, 112 Ill. 544; *Kruse* v. *Wilson*, 79 id. 233 ; *Myers* v. *Ladd*, 26 id. 415 ; *Brown* v. *Allen*, 113 id. 59.

A party claiming under a deed is not permitted to deny anything in the deed under which he claims nor any fact recited in such deed. *Insurance Co.* v. *Littlefield*, 67 Ill. 368; *Byrne* v. *Moorehouse*, 22 id. 603 ; *Pinckard* v. *Milmine*, 76 id. 453.

A vendee of land under a parol contract is estopped to dispute the vendor's title in ejectment. (*Whitney* v. *Cochran*, 1 Scam. 209.) And in such case he is estopped to set up an adverse title. *Beebe* v. *Swartwout*, 3 Gilm. 162; *Fitch* v. *Baldwin*, 17 Johns. 161.

The contract (deed) does not mean center of the track, as counsel assert, but the words of the contract mean what the parties to the contract understood was meant by those words when they made it. *Williams* v. *Fletcher*, 129 Ill. 362 ; *Fougner* v. *Bank*, 41 Ill. App. 202.

The manner in which it was treated by the parties, and all the circumstances, may be resorted to to learn its true meaning. *Bank* v. *Waterman*, 30 Ill. App. 548; *Hall* v. *Bank*, 133 Ill. 241; *Shreffler* v. *Nadelhoffer*, 133 id. 555.

Courts will place themselves in the position of the parties, to understand the language in the sense it was used and to give a proper meaning to the terms of the contract. *Wilson* v. *Roots*, 119 Ill. 384; *Burgess* v. *Badger*, 124 id. 292 ; *People* v. *Murphy*, 119 id. 160.

Mr. Justice Magruder delivered the opinion of the court:

This is an action of ejectment, begun on January 27, 1893, by Miranda Tamplin, the widow, and John Tamplin and others, the children and heirs of one Benjamin Tamplin, deceased, who died on December 8, 1892, against the appellant company to recover the possession of a strip of ground from ten to fifteen feet wide next to and outside of a fence, built by the Tamplins to separate from the railroads the portion of lots 9, 10, 11, 12 and 13 in block 1, Lower Peoria, occupied by them. The case was tried twice. Before the retirement of the jury on the first trial the suit was dismissed as to Miranda Tamplin, the widow, and the prosecution of it was continued in the names of the heirs. The first trial resulted in verdict for plaintiffs, which was set aside on motion of the defendant in December, 1893. The second trial in May, 1894, again resulted in verdict for the plaintiffs, finding them to be the owners in fee of the premises described in the declaration, and that the defendant was guilty of wrongfully taking and withholding the possession thereof from the plaintiffs. Motion for new trial was overruled, and judgment rendered in accordance with the verdict, and for costs against the defendant. The present appeal is prosecuted from such judgment.

Of the five lots above named lot 9 is the most easterly and lot 13 the most westerly; all of them front south on Center street, each having a frontage of about 58 feet on said street and a depth to the north of about 225 feet; and the east line of lot 9 fronts on Hamilton street, its southeast corner being on the corner of Hamilton and Center streets, Hamilton street running north and south and Center street east and west. Three railroad tracks run from the southwest to the northeast across said lots. The first is the main track of the Chicago, Burlington and Quincy Railroad Company; the next is the main

track of the appellant company, originally known as the Peoria, Pekin and Jacksonville Railroad Company, lying south of the C., B. & Q. track and parallel with it, and running from the southwest corner of lot 13 towards, and a little to the north of, the northeast corner of lot 9; the third track is a side track of the appellant, laid in November, 1891, parallel with and south of its main track and running in the same general direction. Still further to the south, parallel with the side track in question, and running from the southwest to the northeast, is the fence which enclosed the premises of the appellees when this suit was begun. The portion of the fence passing through lots 9 and 10 is about 45 feet distant from the center of the C., B. & Q. track; the portion thereof passing through lots 11, 12 and 13 varies slightly from that distance. The distance between the main track of the C., B. & Q. railroad company and the main track of appellant is about 20 feet. The space between appellant's main track and the fence in question is about 23 feet, or perhaps a little more. When the side track was laid in this space in November, 1891, the whole of the space was north and outside of the fence. There is something over 12 feet between appellant's main track and side track, and something over 9 feet between the side track and the fence. The strip in controversy, as we understand it, includes the side track and the space between it and the fence. The appellant company claims to own a piece of ground, running from the southwest to the northeast across said lots, which is 25 feet in width, the north line of which is about 20 feet south of the center of the C., B. & Q. track, and the south line of which is the fence of the appellees, and upon which have been located its main and side tracks, with the usual railroad ditch, and embankment, and other evidences of ownership.

The only title, upon which the plaintiffs below, appellees here, sought to recover, is a title alleged to have been acquired by an adverse possession of twenty years

of the premises in controversy. They introduced no deed of lots 9 and 10; and the only deed of lots 11, 12 and 13 produced by them is a deed, dated April 27, 1869, executed by Thomas H. Powers and wife to Benjamin V. Tamplin, conveying so much of said lots 11, 12 and 13 "as lies on the lower side, and southeast of the Toledo, Peoria and Warsaw, the Peoria, Pekin and Jacksonville, and the Chicago, Burlington and Quincy (formerly Peoria and Oquawka) railroads and the right of way belonging to the same." What title Powers had is not shown.

To show title on its part, the defendant below, appellant here, introduced a deed dated August 2, 1864, executed by Benjamin V. Tamplin and his wife, to the Peoria, Pekin and Jacksonville Railroad Company (whose successor the appellant is), conveying, in consideration of $700.00, "part of lots numbered nine (9) and ten (10), in block number one (1), in the town of Lower Peoria, beginning at the northeast corner of said lot number nine and extending thence southwesterly to the west line of said lot ten (10), with a width of 25 feet, lying adjoining and parallel with the land of the Chicago, Burlington and Quincy railroad, the nearest part of the land herein conveyed being 20 feet distant from the center line of said C., B. & Q. railroad, being part of the same land deeded by George Woodruff to Miranda Tamplin, who in this deed relinquishes all her right, title and interest therein." This deed was acknowledged by Tamplin and his wife on September 5, 1864, and recorded on September 8, 1864. It was of course unnecessary for the defendant to trace title to lots 9 and 10 any further back than Benjamin V. Tamplin and his wife, because the plaintiffs also claimed under said Tamplin, by reason of a title by adverse possession of twenty years alleged to have been acquired by Tamplin in his lifetime. Defendant then introduced a deed dated December 3, 1864, executed by Edward J. Cowell and Mary P. Cowell, his wife, conveying, in consideration of $330.00, "parts of lots numbered

eleven (11) and twelve (12) and thirteen (13), in block num-
bered one (1), in Lower Peoria, being a strip of ground
twenty-five (25) feet in width, running across each of the
above mentioned lots, parallel with and adjoining the
ground owned by the Chicago, Burlington and Quincy
Railroad Company, beginning on the southeasterly side
of said Chicago, Burlington and Quincy Railroad Com-
pany's land, at a distance of twenty (20) feet from the
center line of said road, and extending southeasterly
twenty-five (25) feet." This deed was acknowledged by
the grantors on the day of its date, and recorded on the
next day. The defendant then showed title in Edward
J. Cowell by a regular chain of conveyances from the
government.

It would seem, as though the title, thus shown by the
defendant, established its ownership of the land, unless
the plaintiffs could sustain their claim that their ancestor
had acquired title, after executing the deed of 1864, by
an adverse possession of twenty years. But counsel for
appellees make certain objections to the deeds of appel-
lant which require notice. The circumstances, under
which the deed of 1864 from Tamplin and his wife to
appellant's predecessor was executed, are these : In 1864
the main track of the C., B. & Q. railroad company was
already laid across the lots in question. Thomas S. King,
the chief engineer, who constructed the P., P. & J. rail-
road, conducted the negotiations for the purchase from
Benjamin V. Tamplin of a strip of ground 25 feet wide
adjoining the land of the C., B. & Q. company on the
south, and running parallel with the track of that road
from the southwest to the northeast. He says, that
Tamplin and his wife claimed in 1864 to own that part
of the lots lying southeasterly of the C., B. & Q. track,
and twenty feet from it; that they "claimed to own to
within 20 feet of the center of the C., B. & Q. railroad
track as then located and used;" that he had understood
the land of the C., B. & Q. company to extend 25 feet from

the center of its track, and, accordingly, had drawn the deed to be signed by Tamplin without the clause, "the nearest part of the land herein conveyed being 20 feet distant from the center line of said C., B. & Q. railroad;" but that, on account of Tamplin's claim that such land extended only 20 feet from the center line of the track, and, in order to settle the matter and end the negotiation, he inserted the clause just quoted in the deed while he and Tamplin were upon the ground examining the boundaries; so that the northern line of the strip 25 feet wide then purchased was 20 feet from the center of the C., B. & Q. track, and the southern line of said strip was 45 feet from the center of said track. If this explanation is correct, the southern line of the strip then bought of Tamplin is substantially one with, and the same as, the fence of the appellees as at present located.

Counsel for appellees contend, that the word "railroad" in the clause above quoted does not mean "railroad" track but railroad right of way, so that the nearest part of the land conveyed, or the northern or northeasterly line of the 25 foot strip, would be distant 20 feet from the center line of the C., B. & Q. right of way. It is then claimed by counsel, that the right of way was only 40 feet wide, and that 33 feet thereof were north of the center of the track and only seven feet were south of it; and that, consequently, the nearest or northerly line of the purchased strip, being 20 feet distant from the center of the right of way, was distant only seven feet from the center of the track. In the first place, we do not think that the testimony supports the contention that the right of way was only 40 feet wide. The evidence leaves the question of the width of the right of way undetermined; it does not show definitely what the width was; no deeds or documentary proofs were introduced to establish it, and the views and recollections of the witnesses are indefinite and uncertain. In the second place, we are unable to agree with counsel in their construction of the

language of the deed.   We think that the word, "railroad," as used in the clause above quoted, means the railroad track, or the road between the rails or under the rails, and that it does not refer to railroad right of way.   This is manifest by a reference to the previous part of the description, which designates a part of lots 9 and 10 having "a width of 25 feet lying adjoining and parallel with the land of the Chicago, Burlington and Quincy railroad." The land here referred to must be presumed to have been the right of way, as, under the circumstances, the railroad company could have owned no land at that point except for right of way; and if the subsequent clause refers to the center of the right of way, it adds nothing to the definiteness of the previous description.   Clauses should be regarded as being inserted for a purpose, and should be given a meaning that will aid the description. Every part of a deed ought, if possible, to take effect and every word to operate.   In construing written instruments, the great object is to arrive at the intention of the parties, and, in order to ascertain their intention, effect must be given to each clause, word or term employed, and none should be rejected as meaningless.   (*City of Alton* v. *Ill. Trans. Co.* 12 Ill. 38; *Mittel* v. *Karl*, 133 id. 65).

To hold that the added clause means 20 feet from the center of the land named in the previous clause, or, in other words, from the center of the right of way, is to leave the boundary as uncertain as it was before the clause was added; but to interpret the words, "from the center line of the C., B. & Q. railroad," as referring to the center of the track, is to strengthen the descriptive part of the deed by fixing an easily recognized monument. A railroad "is a road specially laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars drawn by steam or other motive power, to run upon."   (Rapalje's Law Dic. page 1061).   The words "center line of the railroad" refer to the center of the track, and indicate the track as a monument which aids

in determining a certain boundary. (*Church* v. *Stiles*, 59 Vt. 642). Nobody seems to have known the extent or dimensions of the right of way. It must be presumed, that the parties to a deed refer to the known rather than the unknown monument. The rule is, that a deed must be construed most strongly against the grantor and most favorably for the grantee, and, so, if there is a doubt as to its construction, or if it contains two descriptions of land conveyed which do not coincide, the grantee is at liberty to elect that which is most favorable to him. (*Cottingham* v. *Parr*, 93 Ill. 233; *Sharp* v. *Thompson*, 100 id. 447).

But counsel for appellees make a further contention, which, as we understand it, is as follows: They claim, that, if the words, "center line of said C., B. & Q. railroad," do mean the center line of the railroad track, then the clause, "the nearest part of the land herein conveyed being twenty feet distant from the center line of said C., B. & Q. railroad," should be rejected as surplusage, upon the alleged ground that it is inconsistent with the previous description in the deed, and that, where there are two descriptions in a deed, the one of which is complete and sufficient in itself, and the other, which is superadded, is incorrect, the incorrect description will be regarded as surplusage, while the correct and complete description will be allowed to stand. (*Burns* v. *Miller*, 110 Ill. 242; *Stevens* v. *Wait*, 112 id. 544). The fallacy of this argument consists in the assumption, that the clause above quoted is incorrect, and that what precedes is complete in itself. The preceding part of the description is not only indefinite without the added clause because there is nothing to indicate the amount, location or boundaries of the "land" which the purchased strip is to adjoin and be parallel with, but it is also indefinite in indicating "the northeast corner of said lot number 9" as the starting point for the strip of land twenty-five feet wide which is conveyed by the deed. Strictly speaking, the northeast corner of lot 9 is a mere point without

length, breadth or width. . How is a strip 25 feet wide to begin at a point? Counsel for appellees say, that the lower or southern, that is, the southwesterly line of the strip should begin at the point. This would throw the whole of the 25 feet north of a line extended from the northeast corner viewed as a point, placing the north line of the strip at a distance of about seven feet south of the center of the C., B. & Q. track, and would make the south line of the strip 32 feet from the center of said track. But why should the southern line of the 25 foot strip start at the "point" any more than the northern line thereof, or the center of the strip which is distant 12½ feet from each side. The previous description with-out the added clause leaves it indefinite and uncertain, whether the north line, or the south line, or the center line of the strip 25 feet wide, or some other line between the north and south sides of the strip, shall be the start-ing point from the northeast corner of the lot. The added clause removes this indefiniteness by providing, that "the nearest part" of the strip, that is, the north line of it, shall be distant 20 feet from the center of the railroad; and the strip must so begin at the northeast corner of the lot as that, when extended across the lots, its north-ern line shall keep at such distance of 20 feet. The added clause, so far from being inconsistent with the previous part of the description, explains it and makes it certain; and it cannot therefore be regarded as sur-plusage. It makes the description of the land conveyed to be a strip 25 feet wide, the northerly side of which is 20 feet distant from the center of the C., B. & Q. track, and the southerly side of which is distant 45 feet from the center of said track. The views here expressed ap-ply to the description in the deed of lots 11, 12 and 13, as well as to the description in the deed of lots 9 and 10.

If the construction thus given to the description in the deeds is correct, then plaintiffs below were not enti-tled to recover, unless they showed title by adverse pos-

session of twenty years in their ancestor, Benjamin V.
Tamplin.

The testimony clearly shows, that the fence, which at
the time of the trial separated the property of appellees
from the strip of 25 feet conveyed to appellant in 1864,
has been in its present position since 1884.   It is sub-
stantially on the southern line of the land claimed by
appellant.   If, therefore, Benjamin V. Tamplin was in
the adverse possession of the premises in controversy, it
must have been between 1864 and 1884.   So far as lots
11, 12 and 13 are concerned, we are unable to discover
any satisfactory evidence in the record which shows that
Tamplin fenced in any portion of said lots until 1869.
His deed from Powers shows, that whatever interest he
acquired in those lots he acquired in 1869, and the wit-
nesses speak of his extending the fence theretofore en-
closing lots 9 and 10 across lots 11, 12 and 13 in 1869.
Twenty years did not elapse between 1869 and 1884, the
latter year being the year when the fence was moved
back to its present position.   The premises described in
the declaration include parts of lots 11, 12 and 13 as well
as parts of lots 9 and 10.   The verdict finds the plaintiffs
to be the owners in fee of the premises described in the
declaration, and the judgment is that they recover said
premises.   The judgment is manifestly for a greater
quantity of land than is shown to be owned by the plain-
tiffs in any view that may be taken of the evidence.
Where such is the case the verdict and judgment cannot
be sustained.   (*City of East St. Louis* v. *Hackett*, 85 Ill. 382).

But if it be conceded, that there was proof enough to
authorize the question of an earlier possession of lots 11,
12 and 13 than the one taken in 1869 to be submitted to
the jury, we think that the court below erred in the giv-
ing and refusal of instructions.   The proof tends to show,
that, after obtaining its deeds in 1864, the appellant's
predecessor constructed its main track upon the strip
purchased by it, and dug a ditch and otherwise took

open and visible possession of at least a part of the land purchased by it. Having entered under its deeds, its actual possession of a part extended its possession to the boundaries named in the deeds, except as to those portions of the premises actually in possession of Tamplin. A party, who enters into the possession of land under a conveyance is presumed to enter according to the description therein; and his occupancy of a part, claiming the whole, is construed as a possession of the entire tract not in the adverse possession of another. (*Barger* v. *Hobbs*, 67 Ill. 592). The proof tends to show that, after 1864, Tamplin moved his fence back several times. In 1869 his fence occupied a position inside of appellant's strip purchased in 1864 and about 14 or 15 feet north from the southern line of said strip. At some time between 1872 and 1876, he again moved his fence southward, and in 1884 he still again moved it to its present position. As he had no deed, he was only in possession of such part of the land as was within the enclosure of the fence; his possession could not be constructive, but, to be available, must necessarily have been actual. Where a person relies upon naked possession as the foundation for an adverse claim, there must be a *pedis possessio*, or actual occupancy. (*Schneider* v. *Botsch*, 90 Ill. 577; *Norris* v. *Ile*, 152 id. 190). Such a possession must be not only actual, but also visible, continuous, notorious, distinct and hostile. (*Shaw* v. *Schoonover*, 130 Ill. 448; Wood on Lim. sec. 257).

When Tamplin moved his fence back, he must be regarded as having abandoned the portion of land thus left unenclosed, which was thereby brought within the constructive possession of the appellant. Appellant was the true owner, and if the true owner be in possession of a part of the land, claiming title to the whole, he has constructive possession of all the land not in the actual possession of the intruder. "Both parties cannot be seized at the same time of the same land under different titles.

The law, therefore, adjudges the seizin of all that is not in the actual occupancy of the adverse party to him who has the better title." (*Hunnicutt* v. *Peyton*, 102 U. S. 33).

Where a party in possession has no paper title, his possession must be continuous ; and if the occupation is by means of a structure upon the land, which is removed or taken away and re-erected on a different part of the land before the Statute of Limitations has run its full time, it follows from the change in the possession, that the part of the land where the old structure stood was not in the actual possession of the trespasser for the requisite time, and hence as to it there is no bar. (*Dietz* v. *Mission Transfer Co.* 25 Pac. Rep. 423). To the rightful owner belongs the constructive possession, and all others as against him are confined to their actual possession. (Wood on Lim. sec. 261; *Evitts* v. *Roth*, 61 Tex. 81). Where adjoining land owners claim a strip of land, they cannot both have constructive possession, but it attaches to the one having the better title, as title draws to it the possession; and an actual adverse possession must follow to divest it. (*Wait* v. *Gover*, 12 S. W. Rep. (Ky.) 1068; *Bristol* v. *Carroll Co.* 95 Ill. 84; *Smith's Heirs* v. *Frost*, 2 Dana, (Ky.) 144). In the present case, Tamplin was the vendor, and appellant's predecessor was the vendee of lots 9 and 10; and a vendor, after conveyance and delivery of possession, will be regarded as a trustee for the vendee, as regards the possession, just as he was a trustee of the title before conveyance; and, hence, if the vendor wishes to change the character of the possession, he must manifest his intention by acts of hostility to the title of his vendee, denying the right of the latter and holding adversely to it. (*Olwine* v. *Holman*, 23 Pa. St. 284).

Now, it is quite evident that Tamplin could not have been in possession of the parts of the land abandoned by him for the period of twenty years after 1864 and before 1884, and yet the verdict was for the whole of the land described in the declaration. We are inclined to think,

that the court erred in instructing the jury, that the possession of the parts of the land left unenclosed when the fence was removed continued after the removals, and in refusing to instruct the jury to the contrary as asked by the defendant.  We see nothing in the case to authorize the conclusion, that the railroad company and Tamplin ever agreed upon the fence, at any position occupied by it, as a boundary or division fence, or that the company acquiesced in any way in the location of the fence as fixing a boundary line; and hence the assumption to this effect in one or more of the instructions was not based upon the evidence.  (*Quick* v. *Nitschelm*, 139 Ill. 251).

The court gave the jury, on behalf of the plaintiffs, the following instruction:

"If you believe, from the evidence, that the defendant claims ownership of the land in dispute, or any part of it, under the deed from Benj. Tamplin and wife, offered in evidence, then the law will not permit the defendant to claim title under that deed and at the same time deny that Tamplin was the owner of the land or any part of it described in the deed."

This instruction was calculated to mislead the jury by inducing them to believe, that appellant could not deny Tamplin's ownership of the land by adverse possession after the deed of 1864.  By accepting the deed of 1864 from Tamplin and his wife and claiming title thereunder, appellant might not be permitted to deny that they owned the land at the time of making the deed, but it certainly was not estopped from disputing an adverse possession set up by its grantors after the execution of the deed.  The instruction is too broad in failing to limit the estoppel to the time when the deed was executed and delivered.

The judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*