[No. 9999. Department One. March 26, 1912.]

HENRY KOENIG, *Respondent*, v. WHATCOM FALLS MILL COMPANY et al., *Appellants*.[1]

BOUNDARIES—SURVEYS—LOST CORNERS—LOCATION OF LINE—EVIDENCE—SUFFICIENCY. Plaintiff's evidence, that he, not being a surveyor, established a disputed center line of a section by measuring forty chains east of the southwest corner of the section, is insufficient to sustain a verdict finding that to be the true location of the line, where the true quarter corner was established in accordance with the rules for relocating lost corners on a straight line between and equidistant from the section corners, by an experienced and disinterested surveyor, who made an accurate survey and found the south line of the section to exceed one mile by 528 feet.

NEW TRIAL—GROUNDS—INSUFFICIENCY OF EVIDENCE—ABUSE OF DISCRETION. It is an abuse of discretion to refuse a new trial for insufficiency of the evidence to sustain the verdict where the evidence as a whole is insufficient, although there is some slight evidence, which, standing alone, might sustain the verdict.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered April 29, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for trespass. Reversed.

*Hadley, Hadley & Abbott* and *Cooley & Horan*, for appellants.

*E. C. Dailey*, for respondent.

PARKER, J.—This is an action to recover damages for the cutting and removal of timber which is claimed to be the property of the plaintiff. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff, from which the defendants have appealed. Among other

[1]Reported in 122 Pac. 16.

errors assigned, is the denial by the trial court of appellants'
motion for a new trial, made upon the ground of insufficiency
of the evidence to sustain the verdict.   In view of our con-
clusions upon the questions presented by this assignment, we
deem it unnecessary to notice other contentions of counsel.

Appellant Whatcom Falls Mill Company is the owner of
the east half of the southwest ¼ of section 22, township 31
north, range 6, east, W. M., in Snohomish county.   Appel-
lant Matson, at the time of the alleged trespass, was em-
ployed by the mill company in charge of its logging opera-
tions upon this land.   Respondent is the owner of the west
half of the southeast quarter of the same section.   This re-
sults in the north and south center line of the section being
the common boundary between the two tracts of land.   Re-
spondent claims that in logging operations conducted by
appellants upon the land of the mill company, they cut and
removed the timber from a strip of his land 478 feet wide,
lying immediately east of and along the boundary line be-
tween the two tracts.   Appellants concede that they inad-
vertently cut and removed timber from a strip of respond-
ent's land about 85 feet wide, lying immediately east of and
along the true boundary line between the two tracts; but
deny that they cut timber from or trespassed upon respond-
ent's land to any greater extent.   It is clear from the record
before us that the jury concluded that the boundary line
between the two tracts was proven to be the line claimed as
such by respondent, and that appellants trespassed upon
his land substantially to the extent claimed by him.   It is
also clear that the jury measured respondent's damage ac-
cordingly.   If the evidence is sufficient to support the con-
clusion of the jury as to the location of the boundary line,
it was not error for the trial court to deny appellants a new
trial; but if the evidence is insufficient to support such con-
clusion, then a new trial should have been granted to appel-
lants.

There is practically no conflict in the evidence upon the

question of the true location of the north and south center line of the section, that being the line in dispute, in so far as the truth of the statements made by the several witnesses in their testimony is concerned. The question is to be decided by the comparative probative force of the facts testified to, rather than by the comparative credibility of the witnesses. We may for present purposes proceed upon the theory that respondent and his witness testified truthfully as to the facts upon which he rests his claimed location of the line.

This land was surveyed by the government in the year 1879. About the year 1889, respondent acquired the west one-half of the southeast quarter of the section from the government. At that time, and at all times since then, the original quarter corner on the south line of the section, which was established by the government surveyor upon the ground, if any such corner was ever so established, has been lost. This is conceded by all parties. The original section corners at the southwest and southeast corners of the section, as established by the government surveyor upon the ground, are both still in existence. This fact is not in dispute. The government survey field notes, which were introduced in evidence, show that the government surveyor first ran east forty chains from the southwest corner of the section, and set a temporary quarter corner at that point; that he then ran on east to the southeast corner of the section making the south line of the section 79.90 chains long; that he then ran back upon the line 39.95 chains and set the permanent quarter corner at that point. So the field notes indicate that the quarter corner was set at its proper location; that is, equidistant between the section corners.

Soon after respondent acquired his land from the government, he attempted to locate his west boundary line, which of course would be the line running north from the south quarter corner through the center of the section, by measur-

ing forty chains east from the southwest corner of the section. He also claims to have measured twenty chains west from a point which he had been told by others was his southeast corner. He never measured from any other points to determine his west boundary. Being unable to find upon the ground any indications of a quarter corner having been there established by the government· surveyor, he concluded that the point he thus determined by his measurements was the correct location of that quarter corner. He then marked a line north from that point through the woods by blazing trees. This is the line he now claims to be the west boundary of his land. He is not a surveyor, though we may assume, for the sake of argument, that his measure of forty chains east from the southwest corner of the section was approximately correct. This of course would be the correct distance from that corner to the quarter corner if the south section corners were exactly twice that distance apart. Considerable reliance is placed upon the fact that the field notes indicate the setting of a quarter corner forty chains east of the southwest corner of the section. We have seen, however, that that was only fixed as a temporary quarter corner, and even if the field notes controlled in cases where the quarter corner is lost, the force of that location would be overcome by the fact that the field notes further show that the permanent quarter corner was established 39.95 chains measured west from the southeast corner of the section. Respondent admits that he never measured from that corner. This is the substance of all the evidence, worthy of serious consideration, in support of respondent's contention that the true boundary is located where he claims it to be.

After the controversy arose between respondent and appellants as to the correct boundary line between their tracts of land, appellants employed A. R. Campbell, a civil engineer of Bellingham, to resurvey this section and locate the south quarter corner and the true boundary line between the tracts.

Mr. Campbell was then a surveyor and engineer of twenty-two years' experience, he had been county surveyor of Whatcom county for four years, had been city engineer for some time, and was experienced in government survey work. His qualifications in this regard are not questioned and there is nothing in the record reflecting upon his veracity. From his testimony it appears that he established the south quarter corner of the section, and the line running north therefrom dividing the section into halves, strictly in accordance with the well-established rules governing the restoration of lost corners and subdividing sections; one of which rules is, that lost quarter corners are to be relocated on a straight line between section corners and equidistant therefrom. 5 Cyc. 874; *Heybrook v. Index Lumber Co.*, 49 Wash. 378, 95 Pac. 324.

This is not only the law, but the trial court in substance so instructed the jury. Mr. Campbell found by his survey, which was apparently conducted with great care, that the south line of the section is 528.6 feet more than a mile long. This resulted in the equidistant point, at which he relocated the quarter corner, being a considerable distance east of where it was claimed to be by respondent. This survey, if correct, is all but conclusive of the fact that appellants have encroached upon respondent's land only about eighty-five feet. There is no question here of agreed location of boundary, nor of adverse possession. The problem of the true location of the boundary line is practically one of surveying only. It is worthy of note that we have in this record the undisputed evidence of at least two experienced persons, one of whom is Mr. Campbell, that the varying of the length of section lines to a considerable extent, as in this case, is not unusual, and that a section is seldom found which is correct.

We have, then, in support of respondent's contention, his attempted relocation of this south quarter corner, for the purpose of ascertaining his west boundary, by a method of

measurement which is not recognized in law as a correct method; though we may concede that the location of that corner by him at a point forty chains east of the southwest corner of the section is some slight evidence of that being its correct location, because that is where it is theoretically presumed to be. That presumption, however, cannot stand against a location established by an accurate survey which ascertains the equidistant point between the section corners to be at another place on the line. Every word of respondent's testimony and the witnesses supporting him might be true, and yet his claimed location of this quarter corner be erroneous. Were we determining the question as between two surveys, fixing the equidistant point between the section corners as the quarter corner, at different places, we, of course, would not, under ordinary circumstances, interfere with the finding of a jury as to which is correct. But in view of the fact that respondent never attempted to find the equidistant point between the two known section corners, and in view of the results of the survey made by Mr. Campbell, we cannot escape the conclusion that the evidence does not sustain the verdict of the jury. Under the law as established in this state, it sometimes becomes the duty of the court to grant a new trial because of the insufficiency of evidence to sustain the verdict, even though there is some slight evidence, which, if standing alone, might sustain the verdict. When it can be seen from the whole evidence, as in this case, that there is such a want of sufficient evidence to sustain the verdict, we think the trial court can be said to have abused its discretion in denying a motion for new trial. The following decisions indicate the views of this court in a general way upon this subject though none of them involve a case just like this. *Pederson v. Seattle Consol. St. R. Co.*, 6 Wash. 202, 33 Pac. 351, 34 Pac. 665; *Corbitt v. Harrington*, 14 Wash. 197, 44 Pac. 132; *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738; *Welever v. Advance Shingle Co.*,

34 Wash. 331, 75 Pac. 863; *Wait v. Robertson Mortgage Co.*, 37 Wash. 282, 79 Pac. 926.

The judgment is reversed and appellants granted a new trial.

CROW and GOSE, JJ., concur.

CHADWICK, J., concurs in the result.