[No. 35097. Department One. December 10, 1959.]

MANFORD A. MARTIN et al., *Appellants,* v. RALPH A. NEELEY, SR., et al., *Respondents.*[1]

[1]Reported in 347 P. (2d) 529.

220

*J. D. Searle* and *W. N. Beal,* for appellants.

*Cunningham & Cunningham, J. T. Moore,* and *Lloyd B. Dysart,* for respondents.

DONWORTH, J.—Appellants initiated this action to quiet title to a strip of land in Lewis county ranging from fifty to seventy-five feet in width and approximately one hundred thirty feet in length, located in the southeast corner of the

southwest quarter of section 12, township 12 north, range 5 east of Willamette Meridian.

The point here in controversy is the location of the quarter corner common to sections 12 and 13 of the aforesaid township and range. The true government quarter corner, as claimed by respondents, is marked by an automobile axle housing and was referred to as the "axle corner" during the trial, and it shall be so designated herein.

Appellants contend, on the basis of a survey by their engineer, Mr. Gibbs, that the true south quarter corner of section 12 is located at a point approximately seventy-five feet south and one hundred thirty feet west of the so-called "axle corner."

The case was tried to the court, sitting without a jury. At the close of the trial, which lasted for two days, the parties submitted written briefs and the court then rendered a memorandum decision, made findings of fact and conclusions of law, and entered a judgment upholding respondents' contention that the axle corner was the true government quarter corner between sections 12 and 13.

Appellants submitted a motion for new trial, with supporting affidavits, and a motion to reopen the case for the taking of further testimony, with supporting affidavits, both of which were denied.

Twelve assignments of error are presented. The first ten assignments are directed to various findings of fact by the trial court. By assignments 11 and 12, appellants assert that the trial court erred in denying their post-trial motions.

■ The first ten assignments simply challenge the determination by the trial court that the true location of the south quarter corner of section 12 is the "axle corner." The question presented is solely one of fact and, since the trial court's findings are amply sustained by the evidence, they are accepted as verities.

At the trial, appellants proceeded upon the theory that the south quarter corner of section 12 was a lost corner, and they thereupon attempted to re-establish the corner, through the survey of Mr. Gibbs, at a point halfway be-

tween the southeast corner and the southwest corner of section 12.

Respondents took the position, which was upheld by the trial court, that the government quarter corner between sections 12 and 13 was not a lost corner, but rather was an obliterated corner which had been perpetuated by the axle housing.

■ The distinction between a lost corner and an obliterated corner is set out in 11 C. J. S. 553, Boundaries, § 13, as follows:

" . . . an obliterated corner may be defined as one of which no visible evidence remains of the work of the original surveyor in establishing it but of which the location may be shown by competent evidence. A lost corner is one which cannot be replaced by reference to any existing data or *sources of information,* although it is not necessary that evidence of its physical location may be seen or that one who has seen the marked corner be produced." (Italics ours.)

■ The applicable law is stated in *Hale v. Ball,* 70 Wash. 435, 126 Pac. 942 (1912), as follows:

"While presumptively quarter section corners are set upon a true line and at a point equidistant between section corners, it is well known that it is not always so. In fact, the carelessness and inattention marking the original government surveys in this part of the country have led the courts to say of their own judicial knowledge that a survey is seldom correct. *Koenig v. Whatcom Falls Mill Co.,* 67 Wash. 632, 122 Pac. 16; *Hyde v. Phillips,* 61 Wash. 314, 112 Pac. 257. When it is made to appear by competent evidence that a government monument does not accord with the survey or plat, the corner as established on the ground must control. . . .

" . . . If no monument or marking of a quarter corner can be found, or the testimony of its location be overcome by better evidence, a court will decree the establishment of a corner under the rule prevailing in the land department of the United States; that is, at a point equidistant from the section corners. *King v. Carmichael,* 45 Wash. 127, 87 Pac. 1120; *Koenig v. Whatcom Falls Mill Co., supra.* But it does not follow that, if there be evidence of a corner which has been destroyed or obliterated by the lapse of time, a court will direct the establishment of a

corner under the rule stated, or any other rule, for the law establishes an obliterated corner where the surveyor actually located it, and not where it ought to be located by a correct survey. *Inmon v. Pearson,* 47 Wash. 402, 92 Pac. 279."

Appellants' sole argument is that there is no substantial evidence in the record to support the trial court's determination that the "axle corner" is the true quarter corner set by the original government survey.

We shall not detail all of the evidence upon this point. As we view it, the testimony of the various witnesses presented by both parties is more uncertain than it is conflicting. Suffice it to say that respondents' witness, Mr. William Christian, who had lived in the area for fifty-two years and owned land in section 13, which adjoins the property here in dispute, testified that he had seen the original government quarter corner dozens of times, and that its location would not miss the "axle corner" very far. Respondents' witnesses, Mr. Cheney and Mr. Coleman, testified that they had seen the original bearing tree used in the original establishment of the quarter corner between sections 12 and 13. Its location, as testified to by these witnesses, coincided with its location as indicated by the government field notes when measured from the "axle corner" by Mr. Leroy and Mr. Gilbert, respondents' two surveyors.

There also was evidence tending to show that the boundary-line fences of adjacent property owners, if extended, would intersect at the "axle corner." Furthermore, Mr. Leroy testified that his investigation of the county records disclosed that fourteen different deeds, covering a period of forty years, conveying lands within the southwest quarter of the southeast quarter of section 12, either tied into or referred to the "axle corner" as the true corner. It is to be noted also that a state highway department map, showing a portion of state highway No. 5, was admitted in evidence, which at least indicated that the state had accepted the "axle corner" as the true corner.

Appellants contend that the testimony of respondents'

witnesses consisted largely of hearsay, conjecture, and conclusions. With this contention, we are inclined to agree. However, from our examination of the record, we readily conclude that the same thing must be said for the testimony of appellants' witnesses.

■ Regardless of how the evidence may be characterized, the burden of proof was upon appellants to establish that the government corner was lost before they were entitled to apply the rule by which their engineer, Mr. Gibbs, located the corner, halfway between the southeast corner and the southwest corner of section 12. *Hale v. Ball, supra.* The trial court having found that appellants had failed to meet that burden, and this court being unable to say that the evidence preponderates to the contrary, they cannot prevail upon this issue.

On this appeal, respondents have moved to strike appellants' assignments of error Nos. 11 and 12 (assigning error to the trial court's denial of appellants' post-trial motions) upon the ground that they are dependent upon the affidavits of L. C. Gibbs, A. J. Hornby, Manford Martin, and J. D. Searle, and that these affidavits have not been made a part of the statement of facts.

■ With the exception of the affidavit of J. D. Searle, the motion is well taken. Affidavits in support of a motion will not be considered by this court unless they are included in the statement of facts or bill of exceptions, and, by certificate of the trial judge, are made a part of the record. *Powers v. Washington Portland Cement Co.,* 79 Wash. 1, 139 Pac. 615 (1914). As an exception to the above rule, we have held that where an affidavit is attached to, and by specific reference made a part of, a motion, it will be considered as part of the record without being included in the statement of facts. *Welch v. Great Lakes Cas. Co.,* 27 Wn. (2d) 117, 176 P. (2d) 436 (1947).

■ The affidavit of J. D. Searle, attorney for appellants, is attached to, and by specific reference made a part of, appellants' motion to reopen the case for additional evidence, and it may therefore be properly considered by this court. The affidavit of J. D. Searle summarizes the con-

tents of the other affiants' affidavits, which are not properly before us. The newly discovered evidence, as disclosed by the affidavit before us, simply tends to bolster appellants' contention that the survey by Mr. Gibbs located the disputed corner where it should be, and it does not tend to prove that the original government corner was a lost corner. At stated above, unless the court finds that there was a lost corner, the true corner is at the place where the government surveyor actually located it, and any error in its location, however plainly shown, is not subject to correction by the courts. *Milwaukee Land Co. v. Weyerhaeuser Tbr. Co.*, 106 Wash. 604, 180 Pac. 879 (1919). It follows that the trial court did not abuse its discretion in denying appellants' motion to reopen the case.

The judgment of the trial court is affirmed.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.