[No. 19028-8-I. Division One. May 9, 1988.]

DD&L, INC., *Appellant,* v. JOHN L. BURGESS, ET AL, *Defendants,* WOLFKILL FEED & FERTILIZER CORPORATION, *Respondent.*

330

*Dennis Jordan*, for appellant.

*Bruce W. Williams, Richard L. Baum*, and *Perkins Coie*, for respondent.

GROSSE, J.—Appellant DD&L, Inc. (hereinafter DD&L), challenges the sufficiency of evidence supporting the trial court's findings of fact and conclusions of law quieting title to a strip of property in John and Mary Burgess (hereinafter Burgess) and Wolfkill Feed and Fertilizer Corporation (hereinafter Wolfkill).[1] Wolfkill cross–appeals and challenges the sufficiency of the evidence as to two findings of fact.

FACTS

On July 31, 1984, DD&L filed suit against Burgess and

---

[1]Burgess was dismissed as a party to the appeal by stipulated order.

Appellate review of a trial court's findings and conclusions is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether the findings in turn support the conclusions of law. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 483, 670 P.2d 648 (1983). The finder of fact is entitled to make all reasonable inferences from the evidence presented. *Adler v. University Boat Mart, Inc.*, 63 Wn.2d 334, 387 P.2d 509 (1963); *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 493 P.2d 1018 (1972).

Wolfkill for trespass. The dispute arose over the location of the northern boundary of an old Chicago, Milwaukee and Puget Sound Railway Company (hereinafter Chicago/Milwaukee) right of way as described in a 1912 deed.[2] The trial revealed that DD&L owned a block–long piece of property north of the disputed boundary line. This land was purchased in June of 1977 from Burlington Northern (successor to Chicago/Milwaukee). Burgess and Wolfkill owned portions of the property south of the boundary. Wolfkill purchased its block–long length of land in April of 1977 from Chicago/Milwaukee and in 1978 sold a portion to Burgess.

Early in 1977 a surveyor named Mueller performed a survey for Wolfkill of its property south of the right of way. This survey was done exclusively from calls and distances from existing deeds and placed the boundary as asserted by DD&L.[3] However, at trial, Mueller disclaimed his 1977 survey as erroneous. He testified that he later surveyed nearby

---

[2]The April 22, 1912 deed conveyed property described as follows: "A strip of land 100 feet in width, having 50 feet of such width on each side of the center line of the main track of the Chicago, Milwaukee and Puget Sound Railway Company, as the same is now surveyed, staked out and established . . .; said center line being more particularly described as follows, to–wit:

"Beginning at a point in the east line of said section 1, 1731.7 feet south 0°51' east of the northeast corner thereof . . ."

[3]A "boundary" is the dividing line between two parcels of land. The boundary lines comprising the four sides of a piece of property are identified by various descriptive elements, such as monuments, courses and distances, area, or by a combination of such elements. A "call" is the general term used to describe any or all of the aforementioned descriptive elements used to identify boundary lines. The term "monument" means a permanent natural or artificial object on the ground which helps establish the location of the boundary line called for. Natural monuments include such objects as mountains, streams, or trees. Artificial monuments consist of marked lines, stakes, roads, fences, or other objects placed on the ground by man. If the monument has width, the general rule is that the boundary is the center line of the monument. A "course" is the direction of a line run with a compass or transit and with reference to a meridian. "Distance" is a horizontal measurement in feet or "chains"—a former surveyor's tool which was checked for deviation in length against a standard kept at the local county seat. A "tie" is a measurement between two points such as two monuments, for example, the distance between a tree and a building or road.

properties by using buildings and other monuments, and that these subsequent surveys caused him to question the accuracy of his 1977 survey. Mueller confirmed his conclusion that his 1977 survey was in error by using ties from Chicago/Milwaukee record drawings showing a measurement made between the east edge of the depot and the center line of the track which did not agree with his original survey. He opined that the true location of the center of the railroad track was approximately 17 to 18 feet north of the distance described in the 1912 deed and that correct distance measurement was 1713.7 feet from the section line, instead of 1731.7 feet.

Another surveyor, Harmsen, was also of the opinion that the center line of the railroad track was constructed 17.38 feet north of the center line as described by the distance call in the 1912 deed. His opinion was based upon an assumption that the track was a monument and his review of records of surveys and maps; curved data in deeds used by other surveyors; 1955 field notes from another surveyor as to ties to the railroad track from a given highway stake; ties obtained from Argue, a Chicago/Milwaukee employee/ engineer familiar with the land transactions relating to Burgess, Wolfkill and DD&L, which ties were made in 1976 between a building and the railroad track on property adjacent to the subject property and ties to the center line of a bordering street named Lewis Street from known monuments, the highway, and another right of way owned by the Great Northern Railway Company. The above information and measurements matched closely with Harmsen's calculations and he was able to fit all of the ties. Harmsen stated that if the track were located as per the 1977 Mueller survey, none of the measurements from these monuments would fit. Further, Harmsen noted that if the distance calls in the 1912 deed were followed the railroad track would have run through the depot and another old

building. In addition, he stated that he surveyed nearby properties which were bounded by the same railroad right of way and concluded that the true northerly line of the railroad right of way was approximately 17 feet north of the location as surveyed by Mueller in 1977. If the Mueller survey was used, the northern boundary line of the railroad right of way on these adjacent properties would not meet the boundary line between Wolfkill and DD&L.

DD&L, through Whitfield, co–owner, testified that after DD&L purchased its property no one talked to adjacent landowners regarding property lines and that he believed that the true property line was located where the blacktop parking lot on the Burgess property ends, although he admitted Burgess never represented to him that the end of the blacktop was the property line. In 1982 Burgess dumped gravel and built a fence approximately 15 feet north of the blacktop, an action which Whitfield now contends trespasses on his property. Burgess testified that he could identify the center of the railroad track by a water meter which he remembered as having been situated exactly in the middle of the track by the depot. Argue testified that the Chicago/Milwaukee track which ran in front of the depot was the original main track; that it had not been moved since its construction; but it was removed in 1976. There was no testimony as to exactly when the track was constructed or whether or not it was constructed on the surveyed, staked out, and established line mentioned in the 1912 deed. Argue testified that the depot had been moved from its original location but did not specify how far or in what direction.

After trial, the court found the former main track of the old Chicago/Milwaukee as constructed to be the monument from which measurements were to be taken to locate the northern boundary of the railroad right of way. The court then found the center of the track to have been located approximately 17 feet north of the distance call as recited in the 1912 deed.

DD&L argues that the center line of the main track of the old Chicago/Milwaukee as staked out and described in the 1912 deed was the monument intended, not the actual track itself as found by the trial court. And, because the center line as marked is no longer capable of being ascertained, the next best call—distance—must be used and the boundary line should be located as surveyed by Mueller in 1977. In the alternative, DD&L contends that Burgess and Wolfkill are estopped from challenging the location of the property line because they are bound by the legal descriptions in their deeds which incorporated the 1977 Mueller survey.[4] Wolfkill contends that the track as constructed was the monument and, because the monument location is inconsistent with the distance call in the 1912 deed and a monument is a superior call to a distance call, it controls in the location of the boundary line. Therefore it contends the 1977 Mueller survey was in error and the right of way boundary line is located as described by the new surveys by Mueller and Harmsen.

---

[4]DD&L cites no authority to support its claim of estoppel. "Generally, an assignment of error unsupported by citation of authority will not be considered by the court." *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 290, 669 P.2d 451, 39 A.L.R.4th 671 (1983). Further, DD&L failed to show by clear and convincing evidence that Burgess and Wolfkill are estopped from challenging the accuracy of the 1977 Mueller survey and the location of the northern boundary line.

　　The elements of equitable estoppel are:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

. . . However, no matter how communicated, the assertion on which estoppel is based must induce *reliance* by the other party.

(Citations omitted.) *McDaniels v. Carlson,* 108 Wn.2d 299, 308, 738 P.2d 254 (1987) (quoting *Harbor Air Serv. v. Board of Tax Appeals,* 88 Wn.2d 359, 366–67, 560 P.2d 1145 (1977)). Here, DD&L has failed to show a representation by either Burgess or Wolfkill upon which it has relied to its detriment. Therefore this claim must fail. Estoppel by deed also is not applicable because "recitals in a deed bind parties and privies, but not strangers . . .", *State ex rel. Wirt v. Superior Court,* 10 Wn.2d 362, 368, 116 P.2d 752 (1941), and DD&L was not in privity with Wolfkill or Burgess as to their land conveyances.

To resolve the dispute in the case sub judice, a court must go through a 2-step inquiry. First, the court must determine whether the center line of the railroad track as staked or the actual track as built was the monument described in the 1912 deed. Second, the court must determine the location of the monument as intended by the 1912 deed from which the northern boundary can be ascertained.

 In construing a description in a deed the court should consider the circumstances of the transaction between the parties and then read and interpret the words used in the deed in light of these circumstances. *Hirt v. Entus*, 37 Wn.2d 418, 224 P.2d 620 (1950); *Roeder Co. v. Burlington Northern, Inc.*, 105 Wn.2d 269, 714 P.2d 1170 (1986). "[W]hat are the boundaries is a question of law, and where the boundaries are is a question of fact." *Rusha v. Little*, 309 A.2d 867, 869 (Me. 1973); *Texas Co. v. Andrade*, 52 S.W.2d 1063 (Tex. Civ. App. 1932).

> [T]o interpret the words, "from the center line of the . . . railroad," as referring to the center of the track, is to strengthen the descriptive part of the deed by fixing an easily recognized monument. . . . The words "center line of the railroad" refer to the center of the track, and indicate the track as a monument which aids in determining a certain boundary.

*Peoria & P.U. Ry. v. Tamplin*, 156 Ill. 285, 294–95, 40 N.E. 960, 962 (1895). Though the monument referred to in a deed does not actually exist at the time the deed was drafted, but is afterward erected by the parties with the intention that it shall conform to the deed, it will control. 6 G. Thompson, *Real Property* § 3044 (1962 repl.). *See also Makepeace v. Bancroft*, 12 Mass. 469 (1815); *cf.* W. Robillard & L. Bouman, *Surveying and Boundaries* § 26.11 (5th ed. 1987) (a road as constructed becomes the monument and controls).

 "Parol evidence is admissible to show the position of the monuments and boundary marks mentioned in a deed . . ." 6 G. Thompson § 3027, at 474. In cases of conflicting calls, the priority of calls is: (1) lines actually run in the

field, (2) natural monuments, (3) artificial monuments, (4) courses, (5) distances, (6) quantity or area. *See also* 6 G. Thompson § 3044; *Matthews v. Parker,* 163 Wash. 10, 299 P. 354 (1931). Where it is shown by competent evidence that a monument does not accord with a survey or plat, the monument as established on the ground must control. *Martin v. Neeley,* 55 Wn.2d 219, 347 P.2d 529 (1959). If the property is resurveyed, the resurvey must rediscover where the original surveyors placed the boundaries rather than determine where new and modern surveys would place them. *Staaf v. Bilder,* 68 Wn.2d 800, 415 P.2d 650 (1966); *Thein v. Burrows,* 13 Wn. App. 761, 537 P.2d 1064 (1975).

■ In summary, the court heard much testimony describing the history and ownership of the subject properties, as well as measurements and conclusions from professional surveyors as to the "true" location of the boundary. The law and evidence support the trial court's conclusion that the track as built was the monument intended for locating the boundary established by the 1912 deed. The track location conflicted with the distance calls in the 1912 deed, and, accordingly, because monuments control over distance calls, the 1977 Mueller survey was in error. The resurveys were based upon ties to other monuments, field notes, maps and surveys of adjacent properties using ties to monuments and were properly relied upon to locate the center of the track and, correspondingly, the northern boundary of the right of way. All of the challenged findings of fact were supported by substantial evidence and reasonable inferences from that evidence. In turn, the findings support the conclusions of law.[5]

---

[5]Wolfkill cross–appeals as to the sufficiency of the evidence supporting the trial court's findings of fact that the main track was not in existence at the time the 1912 deed was signed, and that the purpose of the 1912 deed was to acquire land for the purpose of constructing a main line track. We need not reach these issues in view of our disposition of this case.

We affirm.

WEBSTER, J., and WILLIAMS, J. Pro Tem., concur.