[No. 50105-4-I. Division One. March 15, 2004.]

GERALD L. RAY, ET AL., *Appellants*, v. KING COUNTY, *Respondent*.

*John M. Groen* (of *Groen, Stephens & Klinge, L.L.P.*), for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Scott D. Johnson, Deputy*, for respondent.

*Kristopher I. Tefft* on behalf of Building Industry Association of Washington, amicus curiae.

Cox, A.C.J. — This quiet title action presents two questions. First, did an 1887 deed to a railroad convey fee title or an easement? Second, did events subsequent to that conveyance divest the railroad of the interest conveyed by that deed?

We hold that Bill Hilchkanum and Mary Hilchkanum, grantors, conveyed fee title by deed dated May 9, 1887 to the Seattle Lake Shore and Eastern Railway (the Railway). We also hold that the location of the railroad tracks, as constructed, controls as a monument. Although the legal description of the location of that monument varies from the legal description of the right-of-way in the May 9, 1887 deed, there was no abandonment that divested the Railway of its fee title interest in the disputed strip. Accordingly, we affirm the summary judgment quieting title in King County, a successor in interest to the Railway.

The facts are largely undisputed.[1] Gerald and Kathryn Ray own lakefront property near the eastern shore of Lake Sammamish in King County, Washington. The Rays are successors in interest to property formerly owned by Bill Hilchkanum and Mary Hilchkanum, husband and wife. The Rays acquired their interest by virtue of conveyances following the Hilchkanums' May 9, 1887 deed that is the focus of our inquiry in this case.[2] Likewise, King County is a successor in interest to the estate the Hilchkanums conveyed to the Railway by that deed.[3]

The basic dispute between the parties centers on their conflicting claims of ownership of the 100-foot-wide strip of land that the Hilchkanums conveyed in their May 9, 1887 deed to the Railway. The strip is adjacent to the property on which the Rays reside.

This strip of land is one segment of the East Lake Sammamish (ELS) Corridor,[4] which runs near the eastern shore of Lake Sammamish. For most of the last century, the ELS Corridor was known as "Northern Pacific Railroad Right of Way" because Northern Pacific acquired ownership from the Seattle Lake Shore and Eastern Railway.[5] Burlington Northern and The Land Conservancy of Seattle were successors in interest to Northern Pacific to the strip and predecessors in interest to King County for that property.[6]

In 1998, the county purchased roughly 11 miles of the ELS Corridor from The Land Conservancy. The purchase

---

[1] Certain facts are set forth in a written stipulation of the parties (Stipulation). Clerk's Papers at 12-13.

[2] Stipulation. Clerk's Papers at 12-13.

[3] Stipulation. Clerk's Papers at 12.

[4] Clerk's Papers at 89.

[5] Clerk's Papers at 89.

[6] Clerk's Papers at 89-90.

included the property the Hilchkanums conveyed in their May 1887 deed.[7]

The Rays argue that the May 9, 1887 deed conveyed only an easement to the Railway, not fee title. They also claim that the subsequent construction of the railway line in early 1888 in a location that varied from the legal description of the right-of-way set forth in the May 1887 deed constituted an abandonment of the estate conveyed in the deed. For these reasons, they claim title to the strip of land vests in them.

King County disputes the Rays' claim to ownership of the strip. The county maintains that the May 9, 1887 deed, properly construed, conveyed to the Railway an estate in fee title to the strip of land. The county further maintains that subsequent construction of the railway line between January and April 1888[8] established a monument as the centerline of the 100-foot strip described in the deed. Finally, the county argues that it acquired fee title to that 100-foot wide strip of land as a successor in interest to the Railway, the grantee under the May 1887 deed.

The Rays commenced this quiet title action to enforce their ownership claim, and King County counterclaimed to enforce its position. On cross motions for summary judgment, the trial court quieted title in the county, confirming that the May 1887 deed conveyed fee title, not an easement. The trial court further decided that the railroad line, as built, established the monument defining the property the original grantors intended to convey by virtue of the May 1887 deed.

The Rays appeal.

---

[7] Clerk's Papers at 89-90. The United States Surface Transportation Board (STB) approved interim trail use (railbanking) of the ELS corridor under § 1247(d) of the National Trails System Act (16 U.S.C. §§ 1241-51) and the STB's implementing regulations (49 C.F.R. § 1152.29). The STB ruling authorized removal of the rails, ties, and spikes, and conversion of the ELS Corridor for a recreational trail as a means of preserving the corridor for future use. Clerk's Papers at 17.

[8] Clerk's Papers at 13.

## CONVEYANCE: FEE SIMPLE TITLE OR EASEMENT?

■ Our review of the grant of summary judgment below is governed by the usual standards: whether there are genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[9] A party seeking to quiet title " 'must succeed on the strength of his or her own title, not on the weakness of the other party's title.' "[10] Where a deed conveys a right-of-way to a railroad, the conveyance may be in fee simple or may be an easement only.[11] The interpretation of such a deed is a mixed question of fact and law.[12] It is a factual question to determine the intent of the parties.[13] Courts must then apply the rules of law to determine the legal consequences of that intent.[14] Whether a conveyance is one of fee title or an easement is a conclusion of law as to the effect of a deed.[15]

The Hilchkanum deed is entirely handwritten, and states in relevant part:

Bill Hilchkanum and wife )

 to )

S.L.S. and E.R.Y. Co. )

In consideration of the benefits and advantages to accrue to us from the location construction and operation of the Seattle Lake Shore and Eastern Railway in the County of King, in Washington territory, we do hereby donate grant and convey unto said Seattle Lake Shore and Eastern Railway Company a

---

[9] CR 56(c); *Brown v. State*, 130 Wn.2d 430, 437 n.4, 924 P.2d 908 (1996).

[10] *Northlake Marine Works, Inc. v. City of Seattle*, 70 Wn. App. 491, 499, 857 P.2d 283 (1993) (quoting *Kesinger v. Logan*, 113 Wn.2d 320, 328, 779 P.2d 263 (1989)).

[11] *Brown*, 130 Wn.2d at 439-40; *Morsbach v. Thurston County*, 152 Wash. 562, 568, 278 P. 686 (1929).

[12] *Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979).

[13] *Veach*, 92 Wn.2d at 573.

[14] *Veach*, 92 Wn.2d at 573 (citing *Vavrek v. Parks*, 6 Wn. App. 684, 690, 495 P.2d 1051 (1972); *Warren v. Atchison, Topeka & Santa Fe Ry.*, 19 Cal. App. 3d 24, 35, 96 Cal. Rptr. 317 (1971)).

[15] *Veach*, 92 Wn.2d at 573.

right of way one hundred (100) feet in width through our lands in said County described as follows to-wit

Lots one (1) two (2) and three (3) in section six (6) township 24 North of range six (6) East.

Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said railway company which location is described as follows to-wit.

Commencing at a point 410 feet West from North East corner of Section six (6) township 24 N R 6 East and running thence on a one (1) degree curve to the left for 753 3/10 feet thence South 16 degrees and 34 minutes West 774 2/10 feet thence with a 3 degree curve to the right for 700 feet thence with an 8 degree curve to the right for 260 4/10 feet thence South 58 degrees and 24 minutes West 259 6/10 feet thence with an 8° curve to the left for 564 4/10 feet thence South 13° 15' W 341 4/10 feet thence with a 6° curve to the right for 383 3/10 feet thence S 36° 15' W 150 feet to South boundary of lot 3 of said Sec 6 which point is 1320 feet North and 2170 feet west from SE corner of said Sec 6.

And the said Seattle Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

To have and to hold the said premises with the appurtenances unto the said party of the second part and to its successors and assigns forever.

In witness whereof the parties of the first part have hereunto put their hands and seals this 9th day of May AD 1887.

Signed Sealed and delivered

in presence of Bill (his X mark) Hilchkanum =seal=

BJ Tallman

DJ Denny Mary (her X mark) Hilchkanum =seal=[16]

 In *Brown v. State*, our Supreme Court most recently articulated the principles governing resolution of the

---

[16] Clerk's Papers at 92-94. *See also King County v. Rasmussen*, 299 F.3d 1077, 1080 (9th Cir. 2002), *cert. denied*, 538 U.S. 1057 (2003).

mixed questions of fact and law before us. There, the court resolved a dispute between property owners abutting the railroad right-of-way, who claimed reversionary interests in it, and the State, which purchased the right-of-way from a successor in interest to the original grantees of the strip under some 37 deeds. The deeds, which were dated between 1906 and 1910,[17] were on preprinted forms with blank lines containing handwritten descriptions of the specific properties conveyed.[18] The court ultimately held that the deeds conveyed fee simple title because they were "in statutory warranty form, expressly convey fee simple title, and contain no express or clear limitation or qualification otherwise."[19]

The court began its analysis by noting that the decisions dealing with conveyancing of rights-of-way to railroads in various jurisdictions "are in considerable disarray" and "turn on a case-by-case examination of each deed."[20] In Washington, the general rule is that when construing a deed, "the intent of the parties is of paramount importance and the court's duty to ascertain and enforce."[21] The court then identified the following factors for determining intent:

(1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was

---

[17] *Brown v. State*, 130 Wn.2d at 430, 433, 924 P.2d 908 (1996).

[18] *Brown*, 130 Wn.2d at 434.

[19] *Brown*, 130 Wn.2d at 433.

[20] *Brown*, 130 Wn.2d at 436-37.

[21] *Brown*, 130 Wn.2d at 437 (citing *Swan v. O'Leary*, 37 Wn.2d 533, 535, 225 P.2d 199 (1950); *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981)).

substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed. In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties.[22]

The court also noted the special significance that has been accorded the term "right of way" in Washington deeds:

In *Roeder*, for example, one of the deeds provided, in part, the grantor: "conveys and warrants unto Bellingham and Northern Railway Company . . . for all railroad and other right of way purposes, certain tracts and parcels of land . . . ." Recognizing a railroad can hold rights of way in fee simple or as easements, we held the deed granted an easement based on the specifically declared purpose that the grant was a right of way for railroad purposes, and there was no persuasive evidence of intent to the contrary. We reached the same result in *Morsbach v. Thurston County*, 152 Wash. 562, 564, 278 P. 686 (1929) (deed granted "the right-of-way for the construction of said company's railroad in and over . . ."); *Swan v. O'Leary*, 37 Wn.2d 533, 534, 225 P.2d 199 (1950) (granted property *"for the purpose of a Railroad right-of-way . . ."*); *Veach v. Culp*, 92 Wn.2d 570, 572, 599 P.2d 526 (1979) (granted "[a] right-of-way one hundred feet wide . . ."). *See also Reichenbach v. Wash. Short Line Ry. Co.*, 10 Wash. 357, 358, 38 P. 1126 (1894) ("so long as the same shall be used for the operation of a railroad" construed as granting easement); *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 505, 111 P. 578 (1910) (deed providing "to have and to hold the said premises . . . *for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors"* grants easement not determinable fee); *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 890, 801 P.2d 1022 (1990) ("grant and convey . . . a right-of-way . . . . To Have and to Hold . . . **so long as said land is used as a right-of-way** . . ." grants easement), *review denied*, 116 Wn.2d 1021[, 811 P.2d 219] (1991).[23]

We begin our analysis of the Hilchkanum deed by determining its form. In *Brown*, the court emphasized the

---

[22] *Brown*, 130 Wn.2d at 438 (citation omitted).

[23] *Brown*, 130 Wn.2d at 438-39 (citations omitted).

grantors' use of the statutory warranty form of deed.[24] Where such a statutory deed is used and the granting clause conveyed a definite strip of land, the court will conclude that the grantor intended to convey fee simple title unless additional language in the deed clearly and expressly showed otherwise.[25]

At the time of the May 9, 1887 conveyance, there were three statutory forms of deed: warranty, bargain and sale, and quitclaim deed.[26] Comparison of the language of the deed, which states in relevant part that the Hilchkanums "hereby *donate, grant and convey*" their property, with the statute then in effect shows that their deed is not substantially in the form of either a statutory warranty deed or a

---

[24] *Brown*, 130 Wn.2d at 437.

[25] *Brown*, 130 Wn.2d at 437. Washington case authority generally classifies the choices in railroad rights-of-way cases as between either fee simple title or easement. *See Reichenbach v. Wash. Short Line Ry.*, 10 Wash. 357, 358-60, 38 P. 1126 (1894) (construing a conveyance in the form of a bargain and sale deed as conveying an easement, not fee title). No case holds that a defeasible fee was intended.

[26] LAWS OF 1885-86, p. 177-79. The statute governing conveyances of real estate and providing for the form of deeds stated, in relevant part:

SEC. 3. That *warranty deeds* for the conveyance of land, may be substantially in the following form: The grantor . . . for and in consideration of . . . in hand paid, *convey and warrant* to . . . the following described real estate . . . . Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a *conveyance in fee simple* to the grantee, his heirs and assigns, . . . .

SEC. 4. *Bargain and sale deeds* for the conveyance of land may be substantially in the following form: The grantor . . . for (and) in consideration of . . . in hand paid, *bargain, sell and convey* to . . . the following described real estate . . . . Every deed in substance in the above form shall *convey to the grantee*, his heirs or other legal representatives and estate of inheritance *in fee simple* . . . .

SEC. 5. *Quit-claim deeds* may be in substance in the following form: The grantor . . . for the consideration . . . *convey and quit-claim to* . . . all interest in the following described real estate . . . . Every deed in substance in form prescribed in this section, when otherwise duly executed, shall be deemed and held a good and sufficient *conveyance*, release and quit-claim to the grantee, his heirs and assigns *in fee* of all the then existing legal or equitable rights of the grantor, in the premises therein described, but shall not extend to the after acquired title unless words are added expressing such intention.

(Emphasis added.)

bargain and sale deed.[27] Consequently, no presumption arises that the deed conveyed fee simple title.[28] But, as the *Brown* court also indicated, determining the form of the deed does not end the analysis of intent.

We next focus on the actual language of the deed. The Rays argue that the Hilchkanum deed did not convey "land," but rather only a "right of way."[29] According to the Rays, the use of the latter term "invariably" means the grantors conveyed a mere easement.[30] We disagree.

■ The granting provisions of the Hilchkanums' deed characterize the conveyed property first as a "right of way one hundred (100) feet in width *through* [the Hilchkanums'] *lands*," and the property conveyed as a "right of way *strip*."[31] The substance of this language is that the subject of the conveyance is a strip of land, not just the grant of some interest "over" the land, as the Rays state. Language conveying a strip of land suggests a fee, not a mere easement.[32]

■ The Rays' argument that the use of the term "right-of-way" invariably means that only an easement is conveyed is overly simplistic. In Washington, as the *Brown* court observed, the use of that term as a limitation or to specify the purpose of the grant *generally* creates only an

---

[27] Emphasis added.

[28] *See Brown*, 130 Wn.2d at 437. The Hilchkanum deed contains neither the language nor the warranties of the statutory warranty or bargain and sale form of deeds. Arguably, this conveyance is substantially in the form of a quitclaim deed, the third form of statutory deed existing at the time of the conveyance. We note that all three forms of statutory deed convey fee title according to the plain words of the governing statute. Nevertheless, the case authority indicates that the form of conveyance is but one of many factors in analyzing instruments like the one before us.

[29] Appellants' Opening Br. at 6.

[30] Appellants' Opening Br. at 6.

[31] Emphasis added.

[32] *Brown*'s third factor considers "whether the deed conveyed a right of way *over* a tract of land, *rather than a strip* thereof." *Brown*, 130 Wn.2d at 438 (emphasis added).

easement.[33] Conversely, where there is no language relating to the purpose of the grant or limiting the estate conveyed, and the deed conveys a strip of land, courts will construe the deed to convey fee simple title.[34] In *Brown*, it was undisputed that the railroad had acquired its interest in the property under the deeds for railroad purposes. But significantly, the court went on to state:

> Identifying the purpose of the conveyance, however, does not resolve the issue at hand because a railroad can own rights of way in fee simple or as easements. *Rather than identifying the purpose of the conveyances, we must conduct a deed-by-deed analysis to ascertain whether the parties clearly and expressly limited or qualified the interest granted, considering the express language, the form of the instrument, and the surrounding circumstances.*[35]

A careful comparison of the express language in the Hilchkanum deed with the language in deeds the courts have examined in other reported cases arising in this jurisdiction reveals few similarities. Only *King County v. Squire*[36] and *King County v. Rasmussen*[37] contain language involving a right of way that is substantially similar to that in the deed before us. For the reasons we discuss later in this opinion, *Squire* is not controlling, merely instructive. And *Rasmussen*, which construed the same deed now before this court, is consistent with *Brown* and the analysis and conclusions of this opinion.

---

[33] *Brown*, 130 Wn.2d at 439.

[34] *Brown*, 130 Wn.2d at 439-40.

[35] *Brown*, 130 Wn.2d at 440 (emphasis added) (citations omitted).

[36] 59 Wn. App. 888, 890, 801 P.2d 1022 (1990) (construing a deed conveying "a right-of-way **Fifty (50)** feet in width through said lands . . . ."), *review denied*, 116 Wn.2d 1021 (1991).

[37] 299 F.3d 1077 (9th Cir. 2002), *cert. denied*, 538 U.S. 1057 (2003).

In *Veach v. Culp*,[38] the court construed language in the relevant portion of the deed, but did not consider the full range of factors that the Supreme Court in *Brown* later articulated for characterizing the nature of the interest conveyed. Thus, we do not read *Veach* as broadly as do the Rays.

■ In short, as the *Brown* court states, a narrow focus on the term "right of way simply begs the question of what interest [the railroad] acquired, because a railroad can own rights of way in fee simple if that is what the deed conveys."[39] Recognizing that the use of the term does not end the analysis, we therefore examine further the factors guiding determination of intent so that we may properly characterize the nature of the interest conveyed.

The first few factors stated in *Brown* require consideration of whether the deed conveyed a strip of land and whether additional language limited the use of the land or the estate conveyed.[40] As we have already observed, the Hilchkanum deed conveyed a strip of land. Whether language in the deed limited the use of the land is the question. The language of the deed grants a right-of-way to the Railway without expressly *restricting* how that right-of-way was to be used.

Turning to the fourth factor, we note that nothing in the language of the Hilchkanum deed limits the grant to the "privilege of constructing, operating, or maintaining a rail-

---

[38] 92 Wn.2d at 572 (construing a deed quitclaiming a " 'right-of-way one hundred feet wide, being fifty feet on each side of the center line of the B.B. & Eastern R.R. as now located . . .'"); *see also Reichenbach*, 10 Wash. at 358 (construing deed conveying "right of way for said railroad, twelve feet in width . . . .' ").

[39] *Brown*, 130 Wn.2d at 442.

[40] These factors are: "(1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose." *Brown*, 130 Wn.2d at 438.

road over the land."[41] Rather, the granting clause expressly conveys "a right of way one hundred (100) feet in width through our lands," without any limitations of the type expressed in the fourth factor. This language is most consistent with the grant of fee title, not an easement.

Factor five examines whether or not a reverter clause is contained in the deed.[42] Presumably, the existence of such a clause suggests an easement was intended.[43] Here, there is no reverter clause. Rather, other language in the deed indicates that the conveyance is without any reservation of any estate in the Hilchkanums.[44]

Factor six requires consideration of whether the expressed consideration for the conveyance is substantial or nominal. Here, the Hilchkanums described the consideration as "the benefits and advantages to accrue to us from the location construction and operation of the Seattle Lake Shore and Eastern Railway in the County of King, in Washington territory." This statement provides no information on whether the consideration is substantial or nominal. Thus, this factor is neutral.

Factor seven requires consideration of the existence and content of a habendum clause.[45] Here, there is such a clause, which states "To have and to hold the said premises

---

[41] This factor questions "whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land." *Brown*, 130 Wn.2d at 438.

[42] The fifth factor is "whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor." *Brown*, 130 Wn.2d at 438.

[43] *Squire*, 59 Wn. App. at 894 (holding that the clause "so long as said land is used as a right-of-way by said railway Company" supports the conveyance of an easement).

[44] That language states "To have and to hold the said premises with the appurtenances *unto [the Railway] and to its successors and assigns forever*." (emphasis added).

[45] *Black's Law Dictionary* defines the term habendum clause as the "clause usually following the granting part of the premises of a deed, which defines the extent of the ownership in the thing granted to be held and enjoyed by the grantee." Further, "the habendum may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to, estate granted in the premises." BLACK'S LAW DICTIONARY 710 (6th ed. 1990).

with the appurtenances unto [the Railway] and to its successors and assigns forever." Such clarifying language does not limit the extent of the interest conveyed in the granting clause. Rather, it suggests no limitation—the grant of fee title, not merely an easement.

*King County v. Squire Investment Co.* illustrates the significance of the language in the habendum clause in determining whether a fee or an easement is granted in a deed conveying a right-of-way to a railroad. In *Squire*, the granting clause of the deed granted a "right-of-way **Fifty (50) feet in width through said lands**," while the habendum clause contained a handwritten addition, "**or so long as said land is used as a right-of-way by said railway Company**." While noting that the language of the granting clause could be understood to convey either a fee or an easement, this court concluded that the granting clause and habendum clause, read together, suggested that "the 'so long as' language was inserted by Squire to preclude the claim that he conveyed a fee simple to the railroad, particularly since the habendum clause granted the interest to the railroad and 'to its successors and assigns forever'."[46]

In contrast, the habendum clause of the Hilchkanum deed contains no limiting language. This distinction supports the conclusion that the granting clause conveyed fee title, not, as in *Squire*, an easement.

 *Brown* recognizes that other considerations suggested by the language of a deed may be helpful in determining whether a conveyance is in fee or merely an easement. The Hilchkanum deed contains such language in the provision following conveyance of the right-of-way to the Railway:

> And the said Seattle Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

---

[46] *Squire*, 59 Wn. App. at 894.

While the parties dispute the legal effect of this language, neither side appears to disagree that the "right" to go on property *adjacent* to the right-of-way to cut trees is an easement, not a fee interest in that adjacent property.[47] We agree that this "dangerous trees" provision conveys an easement—the right to cut trees that endanger the operation of the Railway.

Moreover, an easement to cut trees on property adjacent to the right-of-way is a more limited right than the interest conveyed in the right-of-way itself—the strip of land. The grant of the interest in the strip was to the land itself, not an interest over the land. The lack of any limitation in the use of the strip starkly contrasts with the more limited right to cut trees only on the property adjacent to the strip. The clear distinction in the extent of rights conveyed supports the conclusion that the grant of the strip of land was in fee, not an easement similar to the more limited right to cut trees on land adjacent to the strip.

We reject as unreasonable the Rays' claim that the apparent overlap in coverage of the two provisions (both are measured from the centerline of the right-of-way) means that the right-of-way is merely an easement. This argument is based on the theory that the grant of the right to cut trees is inconsistent with the grant of a fee because the holder of a fee would not need such a grant. But the argument ignores other language in the "dangerous trees" provision that focuses on that right being granted for property *adjacent* to the right-of-way.

We turn next to the subsequent conduct of the parties, another factor the *Brown* court identified as indicative of intent. To the extent any uncertainty remains after consideration of the form and language of the May 1887 Hilchkanum deed, Bill Hilchkanum's exclusion of the right-

---

[47] Appellants' Reply Br. at 18 (arguing that the use of the term "right" in this provision of the deed conveys an easement).

of-way from subsequent deeds removes any doubt that the 1887 deed conveyed fee title to the Railway.[48]

According to the record, the legal description of the Rays' property is:

> That portion of *Government Lot 3*, Section 6, Township 24 North, Range 6 East, W.M., in King County, Washington, described as follows: [metes and bounds description][49]

In 1898, Bill Hilchkanum conveyed to his then wife Annie Hilchkanum "Lot one (1) *less three (3) acres right of way of railroad* and *lot three (3) less three and 25/100 acres right of way of railroad,* and all of lot five (5). . . ."[50] Thus, the plain language of the 1898 deed excludes the previously conveyed right-of-way from the conveyance and explains why ("right of way of railroad"). The 1898 deed therefore clearly indicates that Hilchkanum's intent in 1887 was to convey the right-of-way to the Railway in fee, not as an easement. And there is no question that this exclusion of the right-of-way from the 1898 deed applied to Lot 3—the property the Rays now own.

Bill Hilchkanum's 1905 conveyance of another portion of Lot 3 to John Hirder provides further support for these conclusions. The deed describes the boundary of the property, in part, as running "thence in a Northeasterly direction *along the right of way of the Seattle Lake Shore and Eastern Railway.*"[51] Hilchkanum's exclusion of the previously conveyed right-of-way is consistent both with his exclusion of the same right-of-way in the 1898 conveyance and the prior conveyance in fee of that same right-of-way in the May 9, 1887 deed to the Railway. There is no other reasonable explanation for him to have excluded the right-of-way from subsequent conveyances. Again, there is no

---

[48] Bill Hilchkanum was a party to each of the subsequent deeds in the record before us. Mary Hilchkanum, the other grantor under the 1887 deed, was not a party to any.

[49] Clerk's Papers at 66 (emphasis added).

[50] Clerk's Papers at 57 (emphasis added).

[51] Clerk's Papers at 63 (emphasis added).

doubt that we again deal with Lot 3—the property the Rays now own.

A third conveyance by Hilchkanum is also consistent with the view that he intended to convey fee title to the right-of-way to the Railway. In 1904, Bill Hilchkanum conveyed to Chris Nelson lot number one, *"less three (3) acres heretofore conveyed to the Seattle and International (sic) Railway for right of way purposes."*[52] Again, there is no indication in this deed that the conveyance was "subject to" the right-of-way, an indication that the strip of land previously conveyed was an easement. Rather, the right-of-way is excluded from the conveyance entirely, an indication that the strip of land was previously conveyed in fee.

We are aware that in 1890, Bill Hilchkanum conveyed all of Lot 2 to Julia Curley without any exceptions.[53] But because the 1890 deed contains no reference whatsoever to the right-of-way, it is not probative of the grantors' intent in the 1887 deed.[54] In any event, Lot 3 is at issue in this appeal, not Lot 2, and the record before us establishes that Hilchkanum was entirely consistent in excluding the right-of-way and stating that no other encumbrances affected Lot 3.

In short, the deeds subsequent to the May 1887 deed consistently demonstrate that Hilchkanum conveyed the right-of-way to the Railway in fee, not as an easement.

The circumstances surrounding the execution of the deed may also affect determination of original intent. The Rays make several arguments based on this factor, none of which is persuasive.

 They first argue that Hilchkanum must have intended to convey an easement in the 1887 deed because conveying fee title to a portion of his unpatented homestead claim would have violated federal homestead law. We disagree.

---

[52] Emphasis added.

[53] Clerk's Papers at 449.

[54] *See Rasmussen*, 299 F.3d at 1087-88.

On March 3, 1873, Congress passed a law, codified at Revised Statutes section 2288, "providing that any *bona fide* settler might convey by warranty against his own act any part of his claim 'for church, cemetery, or school purposes or for a right of way for railroads.' "[55] This statute governs where, as here, the grant of a right-of-way relates to homestead property.

The Rays argue that the United States Supreme Court's decision in *Great Northern Railway v. United States*[56] is dispositive here. But that decision interpreted a different law, the Act of March 3, 1875, which governed the grant of rights-of-way across *public lands* to railroads.[57] Private, not public, lands are at issue here. Thus, the United States Supreme Court's holding in the *Great Northern* is inapplicable here.

The Rays also cite two Department of the Interior decisions, which they argue support their contention. Again, we disagree.

In the first, *South Perry Townsite v. Reed*,[58] the Department considered whether the term "for the right of way of railroads," as used in section 2288 of the Revised Statutes, limited the size of the right-of-way that could be granted to the width of the track and cars, or could include "such space

---

[55] *Minidoka & S.W. R.R. v. United States*, 235 U.S. 211, 216, 35 S. Ct. 46, 59 L. Ed. 200 (1914) (quoting Rev. Stat. § 2288). 17 Stat. 602, ch. 266 (1873) states in full:

> [A]ny person who has already settled or hereafter may settle on the public lands of the United States, either by pre-emption, or by virtue of the homestead law or any amendments thereto, shall have the right to transfer by warranty, against his or her own acts, any portion of his or her pre-emption or homestead for church, cemetery, or school purposes, or for the right of way of railroads across such pre-emption or homestead, and the transfer for such public purposes shall in no way vitiate the right to complete and perfect the title to their pre-emptions or homesteads.

[56] 315 U.S. 262, 62 S. Ct. 529, 86 L. Ed. 836 (1942).

[57] *Great N.*, 315 U.S. at 274-75. *See also Minidoka*, 235 U.S. at 216 ("[The Act of 1875], however, by its very terms applies only to 'public lands' and hence cannot be construed to empower the Secretary to authorize the building of roads across lands which had been segregated from the public domain by the entry and possession of homesteaders or preëmptors.").

[58] 28 Pub. Lands Dec. 561 (1899).

as is necessary for side tracks, stock yards, or other purpose incident to the proper business of a railroad as a common carrier."[59] This issue has no relevance here.

The second Department of the Interior case, *Lawson v. Reynolds*,[60] dealt with an agreement by a homestead applicant to allow construction of an electric plant on the land she was claiming as a homestead, before perfection of her entry. The Department concluded that the agreement was "not an alienation of any part of the land, but a mere lease of a portion of the premises and the grant of an easement" and therefore did not bar consummation of her entry.[61] This decision is completely inapposite, and the Rays do not explain how it bolsters their arguments.

We conclude that neither of these decisions by a federal agency, neither of which involved the interpretation of Washington real property law, is helpful in addressing the questions before us.

The Rays also look to a dictionary definition of the term "right of way" to support their claim that the 1887 deed conveyed only an easement, not fee title. As *Brown* states, a right-of-way may either be in fee or an easement.[62] Thus, a dictionary definition is neither dispositive nor particularly helpful here. Moreover, that court expressly rejected the argument that use of the term "right of way" in the caption of a deed meant that the conveyance was an easement rather than fee simple.[63] Thus, parsing the language either in the body of a deed or its caption and looking to a dictionary for the meaning of such language adds little, if anything, that is useful to the analysis.

---

[59] *South Perry*, 28 Pub. Lands Dec. at 562.

[60] 28 Pub. Lands Dec. 155 (1899).

[61] *Lawson*, 28 Pub. Lands Dec. at 159-60.

[62] *Brown*, 130 Wn.2d at 439.

[63] *Brown*, 130 Wn.2d at 444; *Conaway v. Time Oil Co.*, 34 Wn.2d 884, 889, 210 P.2d 1012 (1949) (observing that the term which is applied to a document by the parties thereto does not necessarily determine the nature of the grant).

The Rays also speculate that the Railway prepared the May 1887 deed.[64] Thus, they argue that we should construe ambiguities in that deed language against the Railway. We decline to do so because nothing in the record supports this argument.

■■■ First, the face of the deed shows that the Hilchkanums executed the deed by making their marks, not by signing the instrument. Of course, neither party disputes that the Hilchkanums could neither read nor write.[65]

While we are mindful of the undisputed evidence that the Hilchkanums could neither read nor write, we are unaware of any rule that says that one who cannot do so lacks the capacity to understand the nature and extent of his or her property or the nature of a conveyance of such property. Nothing in the record before us indicates that the Hilchkanums failed to understand what they were doing in this particular transaction, a point counsel for the Rays appeared to concede at oral argument of this case.

■■■ Second, and more importantly, examination of the deed shows that it is entirely handwritten, apparently by the same person. Both the language of the main part of the deed, as well as the acknowledgment, is in the handwriting of the notary who acknowledged the signatures of the Hilchkanums, B.J. Tallman.[66] Nothing in the record before us indicates that he was the agent of the Railway. Absent such proof, we fail to see why we should construe ambiguities in the May 1887 deed against the Railway. Rather, to the extent we were to engage in applying a rule of construction to any perceived ambiguities in the language of the

---

[64] Appellants' Reply Br. at 7.

[65] We note that the Rays characterize Bill Hilchkanum as "a Native American who could not read or write." Appellants' Opening Br. at 16. They also state in their brief that he was "an illiterate Native American." *Id.* at 26. The use of the term "Native American" in these characterizations adds nothing that is analytically useful. To the extent that the Rays imply something more than his illiteracy by the use of the term, such implication is improper.

[66] Clerk's Papers at 92-94.

Hilchkanum deed, we would construe the deed against the Hilchkanums, the grantors.[67]

■ Third, the Rays also rely on the opinions of expert witnesses to support their position. Because courts decide the legal questions before us, not experts, we decline to give credence to these opinions.[68] Moreover, none of the designated experts to whom the Rays point has addressed the effect of the language in the very deed by which the Rays acquired title to their property:

That portion of *Government Lot 3*, Section 6, Township 24 North, Range 6 East, W.M., in King County, Washington, described as follows:

Beginning on the shore of Lake Sammamish at the northwest corner of a tract of land conveyed to W.C. Dahl by Henry M. Johnson by deed dated October 6, 1931, and recorded in Volume 1588 of Deeds, page 137, under King County Recording No. 2808278, records of King County, Washington; thence running southerly along the shore line of Lake Sammamish, a distance of 300 feet to the true point of beginning;

thence southerly along said shoreline of Lake Sammamish, a distance of 125 feet;

thence east to the westerly right of way of East Lake Sammamish Place S.E. (formerly Redmond Issaquah Road);

thence northerly along said right of way to a point due east of the true point of beginning; thence due west to the true point of beginning;

*EXCEPT the Northern Pacific Railway Company's right of way.*[69]

---

[67] "When the court remains in doubt as to the parties' intent or as to the quantum of interests conveyed, a deed will be construed against the grantor." 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 7.9, at 463 (1995) (citing *Wright v. Olsen*, 42 Wn.2d 702, 257 P.2d 782 (1953); *Cook v. Hensler*, 57 Wash. 392, 107 P. 178 (1910)).

[68] *State v. Olmedo*, 112 Wn. App. 525, 532, 49 P.3d 960 (2002), *review denied*, 148 Wn.2d 1019 (2003) ("Under ER 704, a witness may testify as to matters of law, but may not give legal conclusions.").

[69] Clerk's Papers at 66 (emphasis added).

■ The term "except" is generally meant to exclude the described property.[70] Here, the deed excludes the right-of-way at issue in this case, another indication that a successor in interest to the Hilchkanums believed that the right-of-way previously conveyed to the Railway was not part of the fee conveyed to the Rays. For these reasons, we do not rely on expert opinion to decide the questions before us.[71]

The Rays also rely on a recent Division Three case of this court, *Hanson Industries, Inc. v. Spokane County*.[72] In *Hanson*, the court held that a series of 1903 and 1904 deeds conveying a right-of-way to a railroad granted an easement rather than a fee simple estate. But *Hanson* is of little utility here beyond its reiteration of the principles stated in *Brown*.

First, as our Supreme Court explained in *Brown*, the language of the deed under scrutiny is of primary importance in determining the intent of the parties, and the cases turn on a case-by-case examination of such language. The *Hanson* court quoted little of the language of the deeds it examined. Thus, we cannot meaningfully compare the language of those deeds with the Hilchkanum deed.

Second, it is apparent from the court's analysis that the deeds in *Hanson* contained language conditioning the conveyances on the construction and operation of a railroad

---

[70] "An 'exception' is properly the withdrawing of some part of a parcel of land from the conveyance, such as a deed that conveys Lot 4, block 2, *except* for the east 20 feet thereof." STOEBUCK, *supra*, § 7.9 at 463.

[71] The dissent appears to rely on an expert opinion by Stephen J. Graddon to support the view that the Railway drafted the deed and that we should construe ambiguities in that deed against the railroad. Dissent at 595. Graddon opines that the railroad drafted the deed because, among other things, the deed's language tracks language in other railroad deeds, a witness signing the deed was associated with the Railway, and Hilchkanum was illiterate. Clerk's Papers at 233-34. No one disputes that Hilchkanum could not have drafted the deed. But neither Graddon's declaration nor anything else in the record before us contests that B.J. Tallman, the notary who acknowledged the deed, drafted it. Likewise, nothing in the record shows that he did so at the direction of the Railway. Neither the status of a witness to the deed nor the alleged similarity in language with other deeds fills this gap. Thus, Graddon's declaration fails either to create a presumption that the Railway drafted the deed or to create a material issue of fact precluding summary judgment.

[72] 114 Wn. App. 523, 58 P.3d 910 (2002), *review denied*, 149 Wn.2d 1028 (2003).

within two years, imposing obligations on the railroad to construct and maintain farm crossings, and releasing the railroad from liability for damages caused by railroad construction.[73] In addition, unlike the Hilchkanum deed, the *Hanson* deeds did not describe the right-of-way in metes and bounds.[74] The *Hanson* court found the foregoing factors to be significant in its determination that the deeds conveyed an easement. The Hilchkanum deed contains no comparable language.

Finally, as we explained above, we find the contrast between the language in the Hilchkanum deed conveying the right-of-way and the language conveying the right to cut dangerous trees on land adjacent to the right-of-way to be compelling evidence that the first conveyed a fee interest and the second an easement. The court in *Hanson* did not discuss any similar provisions in the deeds it examined, and we presume none existed. In addition, we concluded that Bill Hilchkanum's subsequent conduct, in expressly excluding the right-of-way in subsequent deeds, demonstrated his intent and understanding of the May 1887 deed as a grant of a fee interest in the right-of-way, not an easement. The subsequent conduct of the parties in *Hanson* did not include any analogous acts.[75]

In sum, *Hanson* provides no support for the Rays' claim that the Hilchkanums' 1887 deed conveyed an easement rather than a fee simple estate.

In *King County v. Rasmussen*,[76] the Ninth Circuit Court of Appeals considered the very deed that is presently before us. There, King County sued to quiet title to a 100-foot-wide strip of land that bisected John and Nancy Rasmussen's property and to obtain a declaration of its rights to use the right-of-way for a public trail. After applying the *Brown* factors, the Ninth Circuit Court of Appeals concluded that

---

[73] *Hanson*, 114 Wn. App. at 532.

[74] *Hanson*, 114 Wn. App. at 534.

[75] *Hanson*, 114 Wn. App. at 535.

[76] 299 F.3d 1077 (9th Cir. 2002), *cert. denied*, 538 U.S.1057 (2003).

the May 1887 deed conveyed fee title, not an easement, to the Railway. Our conclusion that the conveyance of the right-of-way in 1887 was in fee is consistent with the reasoning and conclusions in *Rasmussen*.

## ABANDONMENT

Finally, the Rays argue that the deed cannot be understood to grant a right-of-way 100 feet wide in the location where the railroad was actually constructed because the actual location of the railroad is not the location described by the course and distance calls in the deed. Again, we disagree.

Here, the parties stipulated that the location of the railroad tracks, as constructed, "is not within the area described by the distance call stated in the Hilchkanum deed."[77] Mike Foley, a senior engineer for the King County Department of Transportation, attempted to determine the location of the centerline of the right-of-way as described in the deed. Because the deed was difficult to read, Foley surveyed the route using three different positions. In each of these surveys, the centerline did not match the actual centerline of the tracks, as constructed.[78] The distances between the test centerlines and the actual centerline were 119, 25, and 5 feet. The majority of the first of these three centerlines, at 119 feet from the actual centerline, would be located in Lake Sammamish.[79]

The county argues that the railroad tracks, as constructed, constitute a "monument" that determines the location of the property, which supersedes the course and distance calls outlined in the deed. "The term 'monument' means a permanent natural or artificial object on the ground which helps establish the location of the boundary

---

[77] Clerk's Papers at 13.

[78] Clerk's Papers at 222-23.

[79] Clerk's Papers at 222. Foley mistakenly stated in his opinion that the centerline would be located "in Lake Washington." Presumably, he meant Lake Sammamish.

line called for."[80] If the description in a deed of the land is fixed by "ascertainable monuments and by courses and distances, the well-settled general rule is that the monuments will control the courses and distances if they be inconsistent with the monument calls."[81]

This court considered this question in *DD&L, Inc. v. Burgess*. In that case, a dispute arose regarding the location of the northern boundary of a railroad right-of-way. The deed in that case described the location of the right-of-way as follows:

> "A strip of land 100 feet in width, having 50 feet of such width on each side of the center line of the main track of the Chicago, Milwaukee and Puget Sound Railway Company, as the same is now surveyed, staked out and established . . .; said center line being more particularly described as follows, to-wit:

> "Beginning at a point in the east line of said section 1, 1731.7 feet south 0° 51' east of the northeast corner thereof . . ."[82]

Based on testimony by surveyors, the trial court found that the centerline of the railroad tracks, as constructed, was 17 feet from the distance call recited in the 1912 deed.[83] We held that the law and evidence supported the trial court's conclusion that the track, as built, was the monument intended for locating the boundary established by the 1912 deed, and that, because the track location conflicted with the distance calls in the 1912 deed, and because monuments control over distance calls, a survey based exclusively on the calls and distances was erroneous.[84]

In this case, the railroad tracks, as constructed, constitute a monument that the deed refers to as the location of

---

[80] *DD&L, Inc. v. Burgess*, 51 Wn. App. 329, 331 n.3, 753 P.2d 561 (1988).

[81] *Matthews v. Parker*, 163 Wash. 10, 14, 299 P. 354 (1931).

[82] *DD&L*, 51 Wn. App. at 331 n.2.

[83] *DD&L*, 51 Wn. App. at 333.

[84] *DD&L*, 51 Wn. App. at 336.

the centerline of the right-of-way conveyed in the deed.[85] The description of the location of the right-of-way in this case is similar to that considered in *DD&L*:

> Such right of way strip to be fifty (50) feet in width *on each side of the center line of the railway track as located* across our said lands . . . which location is described as follows to wit [legal description].[86]

Because the location of this monument conflicts with the distance calls in the deed, and because the monument controls over the distance calls, we hold that the strip of land conveyed in this deed is centered on the railroad tracks, as constructed.

The Rays argue that this case is distinguishable because the tracks in this case were built after the deed was signed. It appears from the language of the deed in *DD&L* that the tracks in that case were at least staked out when the deed was written. But this distinction is immaterial. As we noted in that case, "[t]hough the monument referred to in a deed does not actually exist at the time the deed was drafted, but is afterward erected by the parties with the intention that it shall conform to the deed, it will control."[87] The Rays cite no authority to the contrary. Nor do they claim any evidence of intent by the parties to place the tracks in Lake Sammamish, an unreasonable result.

The Rays argue that a Kansas case, *Aladdin Petroleum Corp. v. Gold Crown Properties, Inc.*,[88] and other cases that

---

[85] " '[T]o interpret the words, "from the center line of the . . . railroad," as referring to the center of the track, is to strengthen the descriptive part of the deed by fixing an easily recognized monument. . . . The words "center line of the railroad" refer to the center of the track, and indicate the track as a monument which aids in determining a certain boundary.' " *DD&L*, 51 Wn. App. at 335 (quoting *Peoria & Pekin Union Ry. v. Tamplin*, 156 Ill. 285, 294-95, 40 N.E. 960, 962 (1895)).

[86] Clerk's Papers at 92 (emphasis added).

[87] *DD&L*, 51 Wn. App. at 335 (citing 6 GEORGE W. THOMPSON, REAL PROPERTY § 3044 (1962 repl.); *Makepeace v. Bancroft*, 12 Mass. 469 (1815); *cf.* WALTER G. ROBILLARD & LANE J. BOUMAN, A TREATISE ON THE LAW OF SURVEYING AND BOUNDARIES § 26.11 (5th ed. 1987) (a road as constructed becomes the monument and controls)).

[88] 221 Kan. 579, 561 P.2d 818 (1977).

have relied on *Aladdin Petroleum*, support their position.[89] But these cases are entirely inapposite. Each of these cases considered the scope of the use of a right-of-way easement, not the location of property transferred in fee simple by a deed. The rule quoted by the Rays, read in the contexts of these cases, is of no use to us here.

To summarize, application of the factors stated and applied by our Supreme Court in *Brown* supports the conclusion that the intent of the Hilchkanums and the Railway in May 1887 was to convey a fee simple interest in the strip of land right-of-way, not an easement. Moreover, the actual placement of the railroad tracks controls as a monument to determine the location of the right-of-way. Thus, the Railway did not abandon the right-of-way described in the deed. The trial court properly concluded that fee title vests in King County.

We affirm the summary judgment quieting title in King County.

SCHINDLER, J., concurs.

BAKER, J. (dissenting) — The majority concludes that the 1887 right-of-way deed between Bill Hilchkanum and Seattle Lake Shore and Eastern Railway conveyed fee title. For a number of reasons I disagree, and conclude that the deed conveyed only an easement.

First, contrary to the majority's conclusion, the evidence establishes that the handwritten deed was drafted by the railroad, and must therefore be construed against it. As King County concedes, Hilchkanum did not write the deed. Extrinsic evidence also supports concluding that the deed must be construed against the railroad. The language contained in the handwritten deed is identical to language used on preprinted forms produced by the railroad. Hilchkanum's attorney, who signed as a witness, was an

---

[89] *See, e.g., Consol. Amusement Co. v. Waikiki Bus. Plaza, Inc.*, 6 Haw. App. 312, 719 P.2d 1119 (1986); *Andersen v. Edwards*, 625 P.2d 282 (Alaska 1981); *Lindhorst v. Wright*, 1980 OK CIV APP 42, 616 P.2d 450.

owner of the railroad. The Rays also provided an affidavit from their expert opining that the deed was drafted by the railroad.

The majority also mistakenly concludes that the Hilchkanum deed conveyed a strip of land.[90] But the deed expressly states that "we do hereby donate grant and convey . . . a right of way one hundred (100) feet in width through our lands . . . ." The term "right of way strip" is found only in the legal description, not in the granting provision.

The majority points to certain subsequent conduct by Hilchkanum to support its conclusion that he intended to convey fee title to the railroad. But these subsequent conveyances only establish that Hilchkanum understood that the railway had a right-of-way across his lands. The majority ignores other conveyances by Hilchkanum which indicate that he intended to convey only an easement to the railroad.

When the language of the deed is properly construed against the railroad, the granting clause conveys only a right-of-way.

*Language in the deed must be construed against the railroad*

It is a well established principle that ambiguity must be construed against the grantor.[91] But as we explained in *Harris v. Ski Park Farms, Inc.*,[92] when the grantee drafts the deed, this rule does not apply.[93] Hilchkanum was illiterate and the handwritten deed contained identical

---

[90] Majority at 0.

[91] *Hodgins v. State*, 9 Wn. App. 486, 492, 513 P.2d 304 (1973).

[92] 62 Wn. App. 371, 814 P.2d 684 (1991), *aff'd*, 120 Wn.2d 727, 844 P.2d 1006 (1993).

[93] *Harris*, 62 Wn. App. at 376 (holding that rule that ambiguities in deed are to be interpreted most favorably to grantee and most strictly against grantor did not apply where alleged ambiguity arose in language incorporated in deed from purchase and sale agreement drafted by grantee); *see also Hanson Indus., Inc. v. County of Spokane*, 114 Wn. App. 523, 531, 58 P.3d 910 (2002) (recognizing that

language to that found in a contemporaneous preprinted deed bearing the railroad's name. The Rays also submitted an affidavit from an expert who opined that "given the use of pre-printed deeds, and given Hilchkanum's illiteracy, there appears no doubt that Hilchkanum did not draft the deed; but rather, it was the product of the railroad company."

The majority states that because Hilchkanum must have understood the nature and extent of his conveyance, the fact that the deed was handwritten by someone else is of no consequence. And the majority holds that because there is nothing in the record indicating that the drafter was an agent of the railroad, the drafter must have been an agent of Hilchkanum. This conclusion wrongly focuses on the identity of the grantor instead of the identity of the drafter of the deed. It is undisputed that the deed's language was taken from the railroad's standard deed. And the affidavit by the Rays' expert creates a material question of fact concerning who actually drafted the document. Taking this affidavit in a light most favorable to the Rays as the nonmoving party, any ambiguities in the deed must be construed against the railroad.[94]

### Hilchkanum's use of the term "right-of-way" granted only an easement

Washington courts have given special significance to the words "right of way" in railroad deeds, explaining that the term "right of way" generally creates only an easement when used "as a limitation or to specify the purpose of the grant."[95] In fact, most Washington cases have construed

---

ambiguities must be construed against railroad because it drafted deed), *review denied*, 149 Wn.2d 1028 (2003).

[94] *See Hanson Indus.*, 114 Wn. App. at 531.

[95] *Brown v. State*, 130 Wn.2d 430, 439, 924 P.2d 908 (1996).

"right of way" language in such instruments as granting only an easement to the railroad.[96]

The majority discounts *Veach v. Culp*[97] because it did not consider the full range of factors later articulated in *Brown v. State*.[98] But *Brown* cites *Veach* with approval. The majority's selective reading of our Supreme Court's precedent is unsupported by the *Brown* decision.

*Veach* clarified the rule set forth in the earlier case of *Morsbach v. Thurston County*,[99] that merely using the term "right-of-way" in a granting clause is enough to establish that the original grantor intended to convey only an easement.[100] In *Brown*, our Supreme Court explained this holding by stating that a "deed in statutory form grants [an] easement where additional language in the deed expressly and clearly limits or qualifies the interest granted."[101]

---

[96] *See, e.g., Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 567, 571, 716 P.2d 855 (1986) (holding that deed granted an easement based on the specifically declared purpose that the grant was a right-of-way for railroad purposes, and there was no persuasive evidence of intent to the contrary); *Morsbach v. Thurston County*, 152 Wash. 562, 564, 278 P. 686 (1929) (deed granted "the right-of-way for the construction of said company's railroad in and over . . . ."); *Swan v. O'Leary*, 37 Wn.2d 533, 534, 225 P.2d 199 (1950) (granted property "for the purpose of a Railroad right-of-way . . . ."); *Veach v. Culp*, 92 Wn.2d 570, 572, 599 P.2d 526 (1979) (granted "[a] right-of-way one hundred feet wide . . . ."). *See also Reichenbach v. Wash. Short Line Ry.*, 10 Wash. 357, 358, 38 P. 1126 (1894) ("so long as the same shall be used for the operation of a railroad" construed as granting easement); *Pac. Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 505, 111 P. 578 (1910) (deed providing "to have and to hold the said premises . . . *for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors*" grants easement not determinable fee); *Hanson Indus.*, 114 Wn. App. at 536 (holding that right-of-way deed conveying strip of land over and across grantor's lands conveyed easement); *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 890, 801 P.2d 1022 (1990) (holding that "grant and convey . . . a right-of-way . . . To Have and to Hold . . . so long as said land is used as a right-of-way . . . " grants easement).

[97] 92 Wn.2d 570, 572, 599 P.2d 526 (1979).

[98] 130 Wn.2d 430, 438, 924 P.2d 908 (1996); majority at 577-78.

[99] 152 Wash. 562, 565-66, 278 P. 686 (1929).

[100] *Veach*, 92 Wn.2d at 574. In *Veach*, the court held that the legal description is part of the granting clause. Although *Brown* appears to contradict this, the court in *Brown* cited *Veach* with approval for the proposition that the term "right of way" in the granting clause limits the estate conveyed. *Brown*, 130 Wn.2d at 437-38.

[101] *Brown*, 130 Wn.2d at 438 (citing *Veach*, 92 Wn.2d 570).

Conversely, when the deed contains no language relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be construed to convey fee simple title.[102] Here, Hilchkanum did explain the purpose of the grant ("the location construction and operation of the Seattle Lake Shore and Eastern Railway") and limited the estate conveyed ("we do hereby donate grant and convey . . . a right of way").

The majority opinion extensively analyzes various factors discussed in *Brown*, and concludes that conveyance of fee simple title was Hilchkanum's intent. But in *Brown*, the court analyzed prior case law and noted that "use of the term 'right of way' as a limitation *or* to specify the purpose of the grant generally creates only an easement."[103] That term is used in the deed in question, both in its title and in its granting clause. In contrast, the deeds considered in *Brown* expressly conveyed fee title to definite strips of land. No such language appears in the Hilchkanum deed's granting clause. Further, although the deed does not explicitly limit the grant to railroad purposes, the consideration recited immediately above the right-of-way grant does state that to be the purpose of the deed. The majority ignores this language when concluding that there is nothing in the deed limiting the grant to operating a railroad.[104]

For example, in *Swan v. O'Leary*,[105] the deed stated that the conveyance was "for the purpose of a Railroad."[106] And in *Morsbach*, the deed explained that the right-of-way was "for the construction of said company's railroad."[107] Here, although there are no explicit words limiting the right-of-

---

[102] *Brown*, 130 Wn.2d at 439-40 (citing *Swan*, 37 Wn.2d at 536; 65 Am. Jur. 2d *Railroads* § 76 (1972); *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 575 N.E.2d 548, 552, 159 Ill. Dec. 50 (1991)).

[103] *Brown*, 130 Wn.2d at 439 (emphasis added).

[104] Majority at 578-79.

[105] 37 Wn.2d 533, 534, 225 P.2d 199 (1950).

[106] *Swan*, 37 Wn.2d at 534.

[107] *Morsbach*, 152 Wash. at 564.

way to railroad use, the Hilchkanum deed does explain that the purpose of the grant was for "the location construction and operation of the Seattle Lake Shore and Eastern Railway."

*A reversionary clause in not necessary to convey only an easement*

The majority places great emphasis on the absence of a reversionary clause in the subject deed. But a railroad right-of-way deed need not contain a reverter clause to effect an automatic reversion to the grantor upon abandonment.[108] As *Hanson Industries, Inc. v. County of Spokane*[109] notes, railroad rights-of-way expire automatically upon abandonment.[110] And in *Veach*, our Supreme Court found that a railroad owned only an easement, despite the absence of a limiting or reversionary clause.[111] The *Veach* court explained that language intending to limit the grant was only "one element in examining the whole of the deed."[112] Instead, the court focused on the use of "right-of-way" in the granting clause, and concluded that the original grantor intended to limit the right-of-way to only an easement.[113] In *King County v. Squire Inv. Co.*,[114] we noted that the phrase "so long as" in the habendum arguably suggested conveyance of a fee simple determinable.[115] But because language in the granting clause strongly suggested conveyance of an easement, we concluded that Squire had

---

[108] *Hanson Indus.*, 114 Wn. App. at 533; *Veach*, 92 Wn.2d at 572-73; *Lawson v. State*, 107 Wn.2d 444, 452, 730 P.2d 1308 (1986); *see also Morsbach*, 152 Wash. at 567.

[109] 114 Wn. App. 523, 58 P.3d 910 (2002), *review denied*, 149 Wn.2d 1028 (2003).

[110] *Hanson Indus.*, 114 Wn. App. at 533 (citing *Lawson*, 107 Wn.2d at 452).

[111] *See Veach*, 92 Wn.2d at 572-73 (reciting deed language).

[112] *Veach*, 92 Wn.2d at 574.

[113] *Veach*, 92 Wn.2d at 574.

[114] 59 Wn. App. 888, 801 P.2d 1022 (1990).

[115] *Squire Inv. Co.*, 59 Wn. App. at 894.

instead inserted this language to clarify that he was granting an easement.[116]

And in *Hanson Industries*, Division Three also found an easement despite the absence of a limiting or reversionary clause.[117] As a recent article explains, a reversionary clause is not necessary to conclude that the landowner granted only an easement:

> If a railroad acquired a perpetual or general easement, then the easement exists in perpetuity, regardless of whether or not the company operates a railroad on the land. These rare perpetual or general easements are found only where no language in the grant specifies the type of use the railroad may make of the land.[118]

It is clear that the Hilchkanum deed did not include a reversionary clause. But contrary to the majority's interpretation of the *Brown* decision, this does not necessarily mean that Hilchkanum intended to convey fee title.[119] As Wright and Hester explain, the fact that a grantor (Hilchkanum) did not limit the right-of-way to railroad use may only serve to make the grant an unconditional easement.[120]

*Absence of exceptions or reservations is indicative of intent to grant an easement*

Another important factor in the *Brown* deeds was the presence of reservations by the grantors. The court found

---

[116] *Squire Inv. Co.*, 59 Wn. App. at 894.

[117] *Hanson Indus.*, 114 Wn. App. at 533.

[118] Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and Shifting Scope of Railroad Easements From the Nineteenth to the Twenty-First Centuries*, 27 ECOLOGY L.Q. 351, 382 (2000).

[119] *See, e.g., Hanson Indus.*, 114 Wn. App. at 533 ("A railroad right-of-way deed need not, however, contain a reverter clause to effect an automatic reversion to the grantor upon abandonment.") (citing *Veach*, 92 Wn.2d at 572-73; *Lawson*, 107 Wn.2d at 452; *Morsbach*, 152 Wash. at 567).

[120] Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and Shifting Scope of Railroad Easements From the Nineteenth to the Twenty-First Centuries*, 27 ECOLOGY L.Q. 351, 382 (2000). Even the conclusion that the easement is unconditional is not necessarily true. As *Hanson Industries* recently explained, "A railroad right-of-way need not, however, contain a reverter clause to effect an automatic reversion to the grantor upon abandonment." *Hanson Indus.*, 114 Wn. App. at 533.

these significant in establishing that the railroad had
obtained fee simple title, because had the railroad only
obtained an easement, the grantors would not have needed
to explicitly reserve access crossings and irrigation ditches:

> Several of the deeds reserve or except the right of the grantor
> to make some use of the land conveyed . . . . The reservation or
> exception of mineral or irrigation rights is consistent with the
> conveyance of a fee; it would not have been necessary to reserve
> such rights had the parties intended an easement because the
> grantors would have retained use of the land. Similarly, the
> obligation to construct or maintain farm crossings or irrigation
> channels is consistent with the conveyance of fee simple title.
> These provisions secure easements to the *grantors* across the
> land conveyed to Milwaukee, and probably would have been
> unnecessary had Milwaukee only held the rights of way as
> easements.[121]

The Hilchkanums made no exceptions in their deed even
though the granted right-of-way bisected their land. The
majority fails to acknowledge that this factor supports
concluding that Hilchkanum granted only an easement.

*Language in Hilchkanum's deed conveying the right to cut
dangerous trees is not evidence that Hilchkanum intended
to grant fee title*

The majority also holds that the "dangerous trees" ease-
ment supports concluding that the right-of-way deed
granted fee title because the easement grant is more
limited than the right-of-way grant in the same deed.
Specifically, the deed grants the railway the right to "go
upon the land adjacent to said line . . . and cut down"
dangerous trees within 200 feet of the centerline of the
track.

But railroad corporations were prohibited from appropri-
ating rights-of-way wider than 200 feet.[122] The railroad's
right to cut trees extended outside of the right-of-way area

---

[121] *Brown*, 130 Wn.2d at 442 n.9 (citation omitted).

[122] Code of 1881, § 2456 provides:

Such corporation may appropriate so much of said land as may be necessary for
the line of such road or canal, or the site of such bridge, *not exceeding two*

allowed by the territorial code because the easement allowing the railroad the right to cut trees was distinct from its right-of-way. This secondary access grant was not exclusive, as the right-of-way was, and terminated if the railroad use terminated, whereas the railroad right-of-way was exclusive and akin to a street right-of-way.

*Subsequent behavior by the parties is inconclusive to show intent*

The majority also concludes that subsequent behavior by the parties supports a conclusion that the deed conveyed fee title.[123] The majority focuses on three subsequent deeds that acknowledge the presence of the railroad right-of-way, while ignoring an earlier deed that does not make any such reservations. The majority justifies this by explaining that Hilchkanum's failure to reserve the right-of-way is not probative of whether or not the parties intended to convey a fee simple estate.[124] But we should not selectively emphasize Hilchkanum's subsequent conveyances. Instead, we should conclude that the subsequent behavior of the parties does not aid our inquiry because it does not conclusively show that Hilchkanum intended to convey either an easement or fee title.

Moreover, Hilchkanum granted the deed omitting reference to the right-of-way in 1890, just three years after granting the railway right-of-way. The deeds that the majority focuses on were granted much later—Hilchkanum's grant to his wife was 11 years after the railway grant, and the other two several years after that.

---

*hundred feet in width*, besides a sufficient quantity thereof for toll-houses, work-shops, materials for construction, a right of way over adjacent lands to enable such corporation to construct and repair its road, canal, or bridge, and to make proper drains; and in the case of a railroad, to appropriate sufficient quantity of such lands, in addition to that before specified in this section, for the necessary side tracks, depots, and water stations . . . .

(Emphasis added.)

[123] *King County v. Rasmussen*, 299 F.3d 1077, 1087-88 (9th Cir. 2002), *cert. denied*, 538 U.S. 1057 (2003).

[124] Majority at 583.

While this is not conclusive evidence of Hilchkanum's intent, it is interesting that the deed closest in time to the subject conveyance omitted any reference to the railroad right-of-way. If that right-of-way was owned in fee by the railroad, the omission was strange indeed.

The majority concludes that the three later deeds show that Hilchkanum intended to convey the right-of-way as fee, and not as an easement. But if Hilchkanum had conveyed a fee to the railroad, he would not have used the term "right-of-way" and instead would have simply indicated that the land itself was previously conveyed to the railroad.

The second deed that the majority relies upon also uses the term "right-of-way," but as a point of reference forming one border of the property. Use of the term "right-of-way" in this manner has no bearing on whether Hilchkanum believed he had conveyed an easement or fee.

As with street easements, although the abutting owner might refer to the boundary as the adjacent street, this does not necessarily mean that the abutting owner does not also own to the centerline of the street. Because railroad easements—like street easements—are exclusive, referencing them in the deed as a right-of-way does not establish that the owner transferred fee title to the railroad.

I acknowledge that in *King County v. Rasmussen*,[125] a federal district court interpreted the Hilchkanum deed and held that it conveyed fee simple title to the right-of-way.[126] On appeal, the Ninth Circuit recognized that the term "right of way" appeared in the Hilchkanum deed's granting clause as well as in the legal description. But the court did not find the phrase determinative of intent, because the language did not clearly limit the use of the land to a specific purpose.[127] The court went on to explain that in "virtually all cases" finding that the term "right of way"

---

[125] 143 F. Supp. 2d 1225 (W.D. Wash. 2001), *aff'd*, 299 F.3d 1077 (9th Cir. 2002), *cert. denied*, 538 U.S. 1057 (2003).

[126] *Rasmussen*, 143 F. Supp. 2d at 1230.

[127] *Rasmussen*, 299 F.3d at 1086.

granted only an easement, the granting or habendum clause contained language clearly limiting the use of the land to a specific purpose.[128] The court concluded that Hilchkanum's deed did not restrict the conveyance by designating a specific purpose, limiting use of the land, or adding a reversionary clause.[129] Noticeably absent from the court's discussion on this issue was any reference to *Veach*.

On appeal, the Ninth Circuit distinguished *Veach* on the basis of (1) other language in the Hilchkanum deed and (2) extrinsic evidence indicating an intent to convey a fee simple estate, neither of which was present in *Veach*.[130] For reasons discussed above, I disagree with the *Rasmussen* court's analysis.

### Conclusion

Use of the term "right of way" in the granting clause of the Hilchkanum deed did not conclusively establish that Hilchkanum granted the railroad only an easement. But because Washington courts give great weight to the term "right of way" when it is used in the granting clause, and nothing else establishes that Hilchkanum instead intended to grant the railroad fee title, I conclude that the conveyance granted only an easement. I therefore dissent.

Review denied at 152 Wn.2d 1027 (2004).

---

[128] *Rasmussen*, 299 F.3d at 1086.

[129] *Rasmussen*, 143 F. Supp. 2d at 1229.

[130] *Rasmussen*, 299 F.3d at 1087 (citing *Rasmussen*, 143 F. Supp. 2d at 1230 n.4).